BURTT v. BURTT.

No. 3702. Decided January 4, 1922. Rehearing Denied February 6, 1922. (204 Pac. 91.)

1. DIVORCE—EVIDENCE HELD TO JUSTIFY REFUSAL OF DIVORCE TO PLAINTIFF HUSBAND. Where the evidence showed that the parties had lived together happily until the husband went to France, and that on his return he wrote to his wife, before he even saw her, that he would no longer live with her and that

it was his own fault, and there was no evidence to sustain his charges of cruelty by the wife, except his charge that she had procured in another state the issuance of a writ ne exeat after he had once moved without informing her and had ceased to contribute to her support, the lower court was justified in denying the divorce to the husband on ground of wife's cruelty.

2. DIVORCE—NOT GRANTED WHERE INJURED PARTY DOES NOT ASK IT, THOUGH FUTURE LIVING TOGETHER IS IMPOSSIBLE. Even if the situation is such as to make it impossible for the parties ever to live together again, a divorce will not be granted, where the fault was that of the husband and the wife did not desire a divorce, but professed her willingness again to live with her husband.

3. DIVORCE—WIFE'S COUNTERCLAIM FOR SEPARATE MAINTENANCE HELD SUSTAINED. In a suit for divorce, a counterclaim by the wife, alleging that she was compelled, without just cause or excuse, to live apart from the husband, and that he, having the ability so to do, failed and refused properly to support and provide for her, which was sustained by the evidence, entitles the wife to separate maintenance, under Comp. Laws 1917, § 3010.

4. DIVORCE—COURT HAS JURISDICTION OVER COUNTERCLAIM BY DEFENDANT AGAINST PLAINTIFF. Where plaintiff had invoked the court's jurisdiction by a suit for divorce, the court had jurisdiction to give the defendant the separate maintenance she prayed for by counterclaim, under Const. art. 1, § 11.[1]

5. DIVORCE—VOLUNTARY NONSUIT HELD PROPERLY DENIED AFTER COUNTERCLAIM AND TRIAL. Where the application for voluntary nonsuit in a suit for divorce was not made by plaintiff until after defendant had filed her counterclaim, and after the evidence had been heard and the cause submitted on both plaintiff's and defendant's causes of action, the application for nonsuit was not seasonably made and was properly denied, under Comp. Laws 1917, § 6848.

6. DIVORCE—AMOUNT FOR SEPARATE MAINTENANCE AND ATTORNEY'S FEES IS LARGELY DISCRETIONARY; DISCRETION NOT INTERFERED WITH ON APPEAL. Under Comp. Laws 1917, § 3010, the allowance to a wife of alimony and the expenses of the trial, including attorney's fees, is largely discretionary, and the trial court's discretion will not be interfered with unless clearly abused.

[1] *Fisk* v. *Fisk*, 24 Utah, 333, 67 Pac. 1064.

7. DIVORCE—ALLOWANCE OF $750 ATTORNEY'S FEES HELD NOT EX-
   CESSIVE. In a suit by a husband for divorce, where the charges
   extended over a long period of years, so as to require much in-
   vestigation, and where the wife, as she had a right to do,
   originally engaged nonresident attorneys, who had represented
   her in a previous difficulty with her husband, and where the
   actual trial of the cause occupied four days and resulted in a
   decree for separate maintenance for the wife to the amount of
   $150 a month, an allowance of $750 for the wife's attorney's
   fees, in addition to $100 allowed at the beginning of the suit,
   was not excessive.

FRICK, J., dissenting in part. GIDEON, J., dissenting.

Appeal from District Court, Third District, Salt Lake
County; *A. R. Barnes,* Judge.

Action for divorce by Wilson Bryant Burtt against Marion
Stiles Burtt, in which the defendant filed a counterclaim for
separate maintenance. From a decree denying the divorce
sought by plaintiff and granting the relief sought by defend-
ant, plaintiff appeals.

AFFIRMED.

*Ball, Musser & Robertson,* of Salt Lake City, for appellant.

*W. H. Leary* and *Wm. H. Bramel,* both of Salt Lake City,
for respondent.

CORFMAN, C. J.

The parties to this action are husband and wife. On Sep-
tember 23, 1920, the plaintiff commenced the action by filing
a complaint in the district court of Salt Lake county charg-
ing the defendant with cruelty as grounds for divorce. After
the usual jurisdictional averments as to marriage and res-
idence, the charging part of the complaint as to cruelty, brief-
ly stated, consists of the following:

"That the plaintiff has suffered dire humiliation because of be-
ing deprived of the social and fraternal fellowship of the friends,

acquaintances, and associates of equal rank and station with the plaintiff in the service as officers of the army of the United States of America, because of the studied contempt with which the defendant has systematically, habitually, and uniformly treated plaintiff's official colleagues and their families; that the plaintiff has, during the greater portion of his married life to the defendant, been obliged to suffer most pitifully on account of the attitude and manifestations of the defendant toward the social proclivities, ideas, hopes, and possible attainments of the plaintiff because of the unwillingness of the defendant, first, to accompany this plaintiff to social functions upon invitation, whether formal or informal, and, socially, by the defendant's refusal to permit of social gatherings to congregate and assemble in the home furnished and maintained by the plaintiff, or permit any social or fraternal intercourse to be indulged in by the plaintiff with the friends, acquaintances, and official associates of the army of the United States of America, in the service of which the plaintiff has been for many years, as a respected, honored, and distinguished officer;  *  *  *  that by cajolery, deceit, and other means the defendant has used the plaintiff's money and salary for the support of her parents and the education of her sisters, over a period of years, culminating in an almost complete support of defendant's parents during the period plaintiff was in France, and that by reason thereof she failed to dress in a manner befitting plaintiff's station, subjecting him to the criticism and ignominy of his friends and associates:  *  *  *  that defendant has failed and neglected to maintain a home, but persisted in living with her parents, although well aware that such action was contrary to the desires and wishes of the plaintiff, and that defendant has failed to bear children and has avoided motherhood, apparently through her wish to minister to the desires of her parents and sisters."

As an amendment to the original complaint it is also charged, as an act of cruelty, that on May 3, 1920, while plaintiff was temporarily employed in Chicago, Ill., in a position of responsibility and importance, and while associated with men of culture and standing, defendant, without cause. or justification, applied for and was granted a writ of ne exeat in the circuit court of Cook county; and, by reason of his inability to give bail at the late hour service of said writ was made upon him, defendant had intended that he would be compelled to remain over night at the Cook county jail; that defendant, among other things, during the years 1917, 1918, and 1919, willfully, maliciously, and falsely stated and

circulated among plaintiff's friends and acquaintances that he had become insane, had lived in illicit cohabitation with a woman while in France, and that he had also failed to provide for and properly support the defendant.

The answer of the defendant, after admitting the marriage and the suing out of said writ of ne exeat, pleads matters in justification therefor, and in substance and effect denies all of the acts of cruelty complained of by plaintiff. By way of counterclaim against the plaintiff, defendant pleads that she is compelled, without just cause or excuse, to live separate and apart from plaintiff, and that he, having the ability so to do, fails and refuses to properly support and provide for her. Defendant prayed judgment and decree for separate maintenance.

The trial court found the issues in defendant's favor, awarding her separate maintenance or alimony in the sum of $150 per month, $750 attorneys' fees, in addition to $100 theretofore paid, and costs of suit. After applying for and being denied a new trial, plaintiff appeals.

As grounds for reversal of the judgment plaintiff assigns numerous errors alleged to have been committed by the trial court in the admission and rejection of evidence; that the trial court's findings of fact and judgment are not supported by the evidence and its decision and judgment are contrary to law; the refusal of the court to grant plaintiff's motions to strike defendant's amendment to the answer and to dismiss her counterclaim; also the refusal of the court to grant plaintiff a voluntary nonsuit or a dismissal of his action.

In brief, the evidence in this case shows, and the trial court found, that the parties intermarried in Cook county, Ill., October 15, 1903; that thenceforth they lived happily together and in accord with each other's expressed desires and wishes until 1919, when plaintiff's attitude changed towards the defendant; that on or about August 17, 1919, after plaintiff had returned from France and before he had seen the defendant, he wrote to her that a great change had come over him, that he had met with and loved another woman, and that he could not come back and take up life with her, but they must

live apart; that thereupon defendant went to the plaintiff
and pleaded with him to live with her, but plaintiff refused;
that shortly thereafter plaintiff, then an officer of high rank
in the army of the United States, resigned his station, left
for some place unknown to defendant, and gave her only a
mailing address in New York City; that from January 1,
1920, up to May 1, 1920, plaintiff did not, with the exception
of $60, contribute anything to the support and maintenance
of the defendant, nor did defendant know where plaintiff was
or what he was doing until about May 1, 1920, when she
learned through others that he was in Chicago; that there-
upon plaintiff went to Chicago, and on May 3, 1920, began
a suit for separate maintenance in the circuit court of Cook
county, and in connection therewith sued out a writ of ne
exeat; that under said writ a sheriff attached the body of
plaintiff and stayed with plaintiff one night and a half day
day in and about a hotel in Chicago; that said proceedings
were then settled by an agreement between the parties
whereby the plaintiff agreed to pay to defendant $100 per
month as long as the parties thereto should live apart; that
at said time plaintiff's income was only $2,400 per year, but
in said agreement it was not provided that the parties should
live apart nor that the defendant should accept said monthly
sum in full of all obligations of the plaintiff; that plaintiff
is now, and for some time past has been, a lieutenant colonel
in the United States army, enjoying an income of $5,500 per
year; that plaintiff has refused to permit, and still refuses to
permit, defendant to live with him; and that it does and will
require $150 per month to support and maintain the defend-
ant. The trial court further finds that aside from the allega-
tions of plaintiff's complaint with respect to the marriage
and residence of plaintiff, none of the allegations therein have
been sustained by the evidence; that by a preponderance of
the evidence the allegations of defendant's answer and coun-
terclaim are sustained.

It is the judgment of this court, after a careful review of
the evidence, that the contention made by the plaintiff that
under the facts shown and as matter of law plaintiff should

have been granted a decree of divorce from defendant is
wholly without merit and admits of but little discussion. He
complains most bitterly that the defendant, under the cir-
cumstances, sued out a writ of ne exeat against him in the
state of Illinois. Perhaps such a writ, unknown to our juris-
diction, may have been a harsh remedy, and it would have
been better to have saved the plaintiff the suffering and hu-
miliation caused by it; but, be that as it may, plaintiff, in
complaining, seems to lose sight of the fact that the course
taken by the defendant in that regard was prompted and
brought about by his own willful misconduct and indifference
toward the defendant. That being true, he has no just cause
to complain.

The record here very conclusively shows that the parties
to this action lived together most happily until 1917, the time
when plaintiff took his departure for overseas service in the
army of the United States while in France. It must suffice
to say, without going into detail, that every accusation now
made by plaintiff against the defendant as to her attitude to-
ward him, and as to her domestic habits and social conduct,
stands contradicted by his own evidence. The evidence shows
that plaintiff returned from overseas service July 19, 1919.
August 17, 1919, before seeing the defendant, he, for the first
time, by a letter, expressed dissatisfaction with her as a wife
or any desire for children, and stated: "I have found also a
woman who means to me all that a mother should be," and
"I am sure you will not want to live with me when you know
that I love some one else." Again, on October 22, 1919, the
plaintiff addressed a letter to the defendant inclosing a news-
paper clipping pertaining to the matrimonial difficulties of a
distinguished citizen abroad, wherein that gentleman, in ad-
dressing his wife by letter, had remarked that "the war had
changed his views of life," that the fault was all his own,
and that he accepted all responsibility for the ending of their
married life. The plaintiff then proceeds to say in his letter
to the defendant:

"I am inclosing this clipping which so nearly parallels our case.
* * * It brought forcibly to me the fact that I tried to tell you

in every way I could that the responsibility for this separation rests entirely on me. If I wrote you otherwise or told you anything else in my letters or conversation I did not mean to. Your last letter to me seemed to infer that I blamed you for the separation. I have tried not to use that word toward you at all. I did not think it. * * * I have never in my mind blamed you. I take all the responsibility for the failure of our life together."

In view of the foregoing frank expressions of the plaintiff, we confess our inability to conceive what legal ground on which he can justly or legally complain of the trial court in not granting him a divorce.

It is argued in this case that under all the circumstances the parties will never be able to again assume the marriage relation by living together as husband and wife, and that therefore it would be better for themselves and society that they be divorced. While that may be true, it should be kept in mind that the plaintiff alone is in fault and that the defendant, under the circumstances, insists upon her strict legal rights. Moreover, it appears that the defendant has in good faith appealed to the plaintiff to permit her to resume marital relations with him, at the same time offering to live the life he would have her live and to do all things in her power to meet the high ideals of what he thinks a wife should be to him. Under these circumstances plaintiff might well permit defendant to resume marital relations with him. As a matter of justice and right, so long as he refuses to allow her to do that, courts will not be inclined to either approve of what appears to be his inexcusable obstinacy or grant him the relief he has prayed for, even if the power belonged to them.

As to the defendant's counterclaim for separate maintenance, we are of the opinion that defendant's case meets every requirement of the statute (Comp. Laws Utah 1917, § 3010), which provides:

"Whenever a husband, being a resident of this state, shall have deserted his wife without good and sufficient cause, or, being of sufficient ability to support her, shall have neglected or refused to properly provide for and suitably maintain her, * * * or where a married woman, without her fault, now lives or may hereafter live separate and apart from her husband, the district court shall, on

the application of the wife, allot, assign, set apart, and decree to her as alimony, the use of such part of her husband's * * * earnings as the court may determine in its discretion."

Confessedly the district court had jurisdiction of the matters set forth in defendant's counterclaim after the plaintiff had filed complaint against her in divorce, thus invoking the court's jurisdiction. *Mott* v. *Mott*, 82 Cal. 413, 22 Pac. 1140, 1142; *Howe* v. *Moran*, 37 Nev. 404, 142 Pac. 535; *Charlton* v. *Charlton* (Tex. Civ. App.) 141 S. W. 290; Constitution Utah, art. 1, § 11; *Fisk* v. *Fisk*, 24 Utah, 333, 67 Pac. 1064.

Nor is there any merit in the contention that the district court erred in its refusals to grant the plaintiff a voluntary nonsuit and a dismissal of his action. Plaintiff's applications were not made until after the defendant's counterclaim had been filed, a trial had, and the final submission of both plaintiff's and defendant's causes of action; therefore not seasonably made in the interests of justice nor in accord with the provisions of our statute. Comp. Laws Utah 1917, § 6848.

Complaint is also made that the court erred in granting the defendant greater sums as alimony and for attorneys' fees than under the circumstances and in fairness and justice to the respective parties should have been allowed.

Section 3010, supra, of our statute provides that in cases of this kind—

"During the pendency of the proceedings, the court may require the husband to pay such sums for costs, expenses, and attorney's fees, and for the support of the wife as it shall deem necessary and proper, in like manner as in actions for divorce."

It therefore follows that the allowance of alimony and the expenses of a trial of this nature, including attorneys' fees, are largely matters within the discretion of the court who tried the case. Unless the trial court clearly abused its discretion in the matters mentioned this court should not interfere. Clearly, in this instance, the amount allowed as alimony was not excessive. The district judge who heard the case, before fixing the amount to be allowed defendant's attorneys, went into the matter as to the

reasonableness of the amount awarded the defendant for her attorneys most thoroughly. After doing that it was ordered that the ''defendant have and receive of and from the plaintiff the sum of $750 for her attorneys' fees by her incurred and expended herein.''

The record in this case shows that in the first instance the defendant employed a firm of Chicago attorneys to serve her in connection with her suit against the plaintiff for separate maintenance in the state of Illinois. That suit was settled and dismissed. Shortly afterwards the plaintiff came to Utah and instituted the present suit against the defendant for absolute divorce. Summons and a copy of the complaint was served upon defendant in Chicago. Naturally, and as we think she had a right to do, defendant turned to and retained the Chicago lawyers, who had theretofore made some investigation, were familiar with, and had been advising and counseling her concerning the matrimonial difficulties with the plaintiff which had led up to the present case, in which the plaintiff had employed local attorneys of experience and of high standing to represent him. Defendant also employed local attorneys of experience and high professional standing to represent and safeguard her interests in the present case, and it was proper and right that she should do so.

The evidence shows that the Chicago attorneys, while this case was pending before the district court, spent 75 hours upon different occasions in the preparation of the necessary pleadings and in taking the depositions of material witnesses in defendant's behalf. The evidence further shows that the usual and customary fees for like services when rendered by Chicago attorneys would be $750 or $800. It is also shown that the trip made by one of the attorneys of the Chicago firm to be present at the trial of this case in Utah would entail an expense of over $150.

As to the value of the services rendered by defendant's Salt Lake attorneys, the district court received expert evidence tending to show that their services alone were worth $750. In plaintiff's behalf, evidence was received tending to show that their services were worth but $350.

As has been seen, the charges made by the plaintiff in his complaint against the defendant took a very wide scope and involved in the highest degree the social standing of the parties, as well as their conduct toward each other in their home life and while living together in the marriage relation. It therefore became necessary for defendant's attorneys, in order to properly meet and combat the charges of the plaintiff, to make extensive preparation, both in the matter of pleadings and in producing evidence for the consideration of the trial court.

The record of the case is a voluminous one. It shows that the pleadings, including motions, demurrers, etc., covers some 140 pages of typewritten matter. The official stenographer's report of the evidence taken at the trial covers over 300 pages. The actual trial of the case commenced March 3d, at 10 o'clock a. m. It was concluded March 8, 1921. Not counting for divers appearances before the court for the purpose of disposing of motions, demurrers, etc., the actual time consumed in the trial occupied some four days. The record here shows that at the time of the trial plaintiff was earning a salary of $5,500 per annum. According to plaintiff's own estimate he is possessed of household goods and effects of the approximate value of $2,500, a house and lot in Pasadena of the value of $3,500, and his liabilities do not exceed $2,500, including the liabilities incurred by him in his efforts to litigate and settle his matrimonial difficulties.

Under all the circumstances as disclosed by the record here, we are not prepared to say that the district court, in awarding an attorney fee of $750, so abused its discretion that this court would be justified in making any intervention. Assuming that the time employed and expenses incurred by the defendant's Chicago attorneys might have been wholly dispensed with, all things considered, including the high social standing of the parties, the responsibilities assumed, and the amount and character of the services rendered by the attorneys for the defendant in this case, we very much doubt if attorneys in this jurisdiction could be employed under contract to render like services for a less

amount than that allowed in this case by the district court.

For the reasons stated, and finding no prejudicial error in the record, the judgment and decree of the district court is affirmed, with costs.

WEBER and THURMAN, JJ., concur.

FRICK, J. I fully concur with the conclusions of the Chief Justice, except in the allowance of $750 additional attorneys' fees. There were no questions in this case save such as and often do arise in divorce proceedings between a husband and wife of the social standing of the plaintiff and defendant. Moreover, the defendant is not a man of wealth, nor of a large income, in view of the existing conditions. I therefore can discover no reason upon which to base the allowance of the additional $750 attorneys' fees. True, the allowance of alimony is largely a matter of discretion which is vested in the trial courts, and which will not be reviewed by this court except in case of an abuse of discretion in that regard. The question of allowance of attorneys' fees, in my judgment, is, however, somewhat different. Attorneys are officers of the courts, and where the reasonableness of their fees must be determined and fixed by a court the allowance should be reasonable in view of all the circumstances. The whole record of the proceedings is before us, and we can judge of what is a reasonable fee in this case quite as well as could the trial court. Again, in this case this court has already made an additional allowance of $150 as fees and cost of printing an additional abstract, all of which has been paid by the plaintiff. The additional abstract has been filed and its costs could not have exceeded $15. Indeed, under the rules of this court the allowance for printing the additional abstract would have to be considerably less than that. As the opinion now stands, the plaintiff would be required to pay the sum of $985, or approximately $1,000, as attorneys' fees in a simple divorce proceeding. In my judgment, that, under the practice prevailing in this jurisdiction, is excessive. The allowance of the additional $750 should therefore, in

my judgment, be reduced to $500, and when so reduced the judgment in all other respects should be affirmed, with costs taxed against appellant.

GIDEON, J. (dissenting).   I concur with Mr. Justice FRICK that the compensation allowed counsel for respondent by the district court is, if not unreasonable, too much, and ought to be reduced by this court.

If the opinion of this court in *Blair* v. *Blair*, 40 Utah, 306, 121 Pac. 19, 38 L. R. A. (N. S.) 269, Ann. Cas. 1914D, 989, is to be accepted as a binding precedent, $500 would be a liberal fee for all services both in the district court and in this court.   This court is clearly within its rights, if upon an examination of a record in divorce proceedings it appears that either party is entitled to relief, to direct that a judgment to that effect be entered.   As I read the opinion of the Chief Justice the appellant is to be condemned and punished (1) for having the consideration and gallantry to accept all blame for the trouble with his wife—a rather commendable thing to do, and not unusual, regardless of the real facts; (2) because he had the honesty, coupled with probably brutal frankness, to speak the truth to his wife about his sentiments toward her.   There are no children, issue of this marriage. Society is not, therefore, vitally interested whether the parties are divorced or not.   No doubt appellant is not blameless. That is equally true of the respondent.   The facts of this record are such that, if the court was of the opinion that a divorce ought not to be granted appellant, it should have, in my judgment, denied any relief under the counterclaim. The statute authorizing a decree for separate maintenance is to all intents and purposes a penal statute.   It gives a wife relief by imposing a penalty on the husband for his wrongdoing without granting him any corresponding relief.   A judgment for support and separate maintenance is a life sentence, or at least that seems to be the intent of the statute.

For the reasons indicated, I withhold my assent to the order affirming the judgment of the district court.