## OSMUS v. OSMUS.

No. 7152.   Decided October 14, 1948.   (198 P. 2d 233.)

See 27 C. J. S., Divorce, sec. 262; 17 Am. Jur. 506. Inability to comply with judgment or order as defense to contempt charge, note, 40 A. L. R. 546.

*C. Vernon Langlois,* of Salt Lake City (*Ray S. McCarthy,* of Salt Lake City, of counsel), for appellant.

*Benjamin Spence,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by the defendant from an order and judgment of the Third District Court holding defendant in contempt of court for failure to pay alimony as required by the terms of an interlocutory divorce decree entered by that court, and from the court's order denying defendant's petition for modification of the alimony decree. The parties are referred to as they appeared in the court below.

The undisputed facts are that the plaintiff and defendant were married in March, 1940 and that three children, all of whom are now living, were born to them. On March 14, 1947, plaintiff commenced an action against defendant for separate maintenance, and on July 15, 1947, the parties entered into a stipulation whereby defendant agreed to pay to plaintiff $100 per month as alimony and support money, payable $25 per week, and the further sum of $50 for attorney's fees. Pursuant to that stipulation, Hon. Roald A. Hogenson, judge of the Third District Court, signed an order providing for payment of temporary alimony and support money as stipulated.

On October 7, 1947, plaintiff filed her second amended complaint wherein she prayed for a divorce and alimony in the sum of $250 per month, and on the same day defendant filed his appearance and consent that his default might be entered forthwith, upon the condition that the alimony and

support money to be awarded should be not more than the total amount of $250 per month. The matter was heard upon the same day, and the court granted plaintiff an interlocutory decree of divorce, providing for alimony in the sum of $100 per month and $50 per month support money for each of the three children, or a total of $250 per month.

Defendant paid plaintiff $50 in October, but made no other payments between the time the interlocutory decree was entered and December 18, 1947, when defendant was served with an order to show cause why he should not be punished for contempt, for failure to make the payments of alimony and support money required by the interlocutory decree. At about the same time defendant filed a petition for modification of the alimony decree. The two matters were heard at the same time. The evidence at the hearing was as follows:

Defendant testified that he was and always had been a fry cook; that up to February 15, 1947, he had been employed by one D. F. Anderson on a profit-sharing arrangement whereby he earned about $800 per month; that on that date (about a month before plaintiff first filed suit against him) his employment with Anderson terminated; that between February 15th and May 16th he had not worked at all; that on the last mentioned date he went to work for Mrs. Theo. Carlson, who operated an eating establishment on south State Street; that all that he received from his employment was board and room, and spending money to an amount not to exceed $1 per day; that Mrs. Carlson's business had not, up to that time been profitable, but that it was hoped and expected that it would eventually become profitable; that when it did become profitable and Mrs. Carlson had recouped her capital investment, defendant was to receive a fifty per cent interest in the business.

Defendant further testified that the prevailing wage scale for fry cooks was $8 per day; that union men worked five and non-union men worked six days a week; that he had

not attempted to secure employment as a fry cook because he had several bills outstanding, and he feared that if he accepted employment for wages that his wages would be garnisheed, and for the further reason that he expected that Mrs. Carlson's business could be built up to a very profitable business, and that he would then be in a much better financial position than he would be if he were working for wages.

He testified that he stipulated to the sum of $250 per month as alimony and support money upon the advice of his atttorney, who had assured him that such amount could later be reduced to an amount consistent with his ability to pay. (It should be noted here that counsel for both parties in the present proceedings are not the same counsel who represented them in the original divorce proceedings.) Defendant also admitted that he was more interested in Mrs. Carlson than he was in his own welfare.

Plaintiff testified that prior to the time the divorce proceedings were commenced, she and her husband had contracted to purchase a home; that the home was in her name; that she sold the equity in the home for $5,000; that she used $2,000 as a down payment on a home, and used up the balance of the $3,000 for living expenses for herself and her family; that the entire $5,000 was exhausted in October, 1947, and during November and December, plaintiff had had to have financial aid from the County Welfare Department.

Mrs. Theo. Carlson substantially corroborated the testimony of defendant as to the terms of his employment by her.

Four assignments of error are raised by defendant, but only two substantial questions are involved:

1.  Did the court err in finding defendant in contempt of court for failure to make the payments of alimony and support money during the months of October, November, and December, 1947, as required by the terms of the interlocutory divorce decree?

2.   Did the court err in denying defendant's petition for modification of the decree in respect to alimony and support money?

We shall consider the questions in the order stated.

There is no dispute between the parties that ■

"it is a prerequisite in contempt proceedings of the nature here under review to an order committing to jail that the one charged should be found able to comply with the court's order *or that he had intentionally deprived himself of the ability to comply with such order.*" (Italics added.) *Hillyard* v. *District Court*, 68 Utah 220, 249 P. 806, 809.

The question which divides the parties is whether there was evidence to support the court's finding of fact No. 5 that defendant

"is still able, with a reasonable effort to earn sufficient to comply with the terms of said decree, but disregarding the order of the court and decree herein, has wilfully failed and neglected to find employment or seek employment or earn money with which to meet his obligations under said decree;   *   *   *"

There is no conflict in the testimony that during the months in question the defendant worked for Mrs. Carlson for board and room and received in addition thereto a small amount of cash for spending money. It is likewise undisputed that defendant had not attempted to secure employment at regular wages. The reason or excuses he gave for not so doing were these:

(1)   He knew that his wife, plaintiff, had received $5,-000 for the equity in the home, and he did not think that she had immediate need for the alimony and support money.

(2)   That he anticipated in the "long run" it would be to his financial advantage to stay with Mrs. Carlson and have a one-half interest in her business.

(3)   That he had bills outstanding in the total sum of about $366 and he feared that creditors would garnishee his checks if he took a job for wages.

The fact that plaintiff received $5,000 for the equity in the home did not excuse the defendant from complying with the order of the court. The existence of independent means might be a factor to be considered by the court in fixing alimony, or in considering a petition for modification of a decree, or perhaps, under certain circumstances, in mitigation of punishment for contempt. But no discretion is left, to a divorced husband, to determine whether he should or will comply with an alimony decree. So long as such decree stands, it is incumbent upon him to comply with it, or at least to exercise every reasonable effort to comply with it. If because of change in the circumstances of the parties it appears that the decree is inequitable, or impossible to comply with, he may petition for modification. But so long as that decree stands, the husband must comply with it, or make every reasonable effort to do so, and this is true regardless of how the financial situation of his former wife may have improved. Any failure to comply or to make a reasonable effort to comply is contempt, and punishable as such.

Nor does a man have a right to sacrifice the present needs and welfare of his family, and particularly of his infant children, to the end that at some indefinite future time he may better his own financial status. His first duty is to provide for those whom he is legally and morally obligated to support, and if it becomes necessary for him to forego business opportunties with bright future prospects but with no present realization, in order to perform his obligations, the law, in the absence of exceptional circumstances, will require him so to do. From all the evidence and all the fair inferences therefrom, the court could reasonably find that defendant entered into his business relationship as much for the purpose of depriving his wife of the alimony and support money to which she was lawfully entitled, as for the purpose of bettering his future from a financial point of view. But if the defendant be given the benefit of all doubts, and his explanation that he expected

eventually to receive profits from the business which would considerably exceed what he would earn as wages, be accepted as true, defendant's legal position would not be improved. He has neither the right nor the privilege, to ignore, for a protracted period of time, his legal obligations to his family for the selfish purpose of advancing his own financial benefit.

The argument of defendant that if he worked for wages, he would be annoyed with creditor's bills and garnishments is so flimsy as to be hardly worthy of notice. It is altogether probable that if defendant indicated a genuine desire on his part to meet these obligations, his creditors would be willing to enter into some mutually satisfactory arrangement for the payment of these bills in small installments. But be that as it may, whatever inconvenience, annoyance, or embarrassment might be occasioned to defendant by these outstanding claims, he was not thereby excused from meeting, or at least making a reasonable attempt to meet, his legal obligations to his family.

There was no error in the court's ruling and order adjudging defendant in contempt of court.

The second question, namely, whether the court erred in denying defendant's petition for modification of the decree, poses no difficulty. It is a principle now firmly established in this jurisdiction that to entitle either party to modification of a decree of alimony or support money, that such party plead and prove a change in circumstances such as to require, in fairness and equity, a change in the terms of the decree. *Cody* v. *Cody*, 47 Utah 456, 154 P. 952; *Chaffee* v. *Chaffee*, 63 Utah 261, 225 P. 76; *Rockwood* v. *Rockwood*, 65 Utah 261, 236 P. 457; *Carson* v. *Carson*, 87 Utah 1, 47 P. 2d 894; *Jones* v. *Jones*, 104 Utah 275, 139 P. 2d 222; *Gardner* v. *Gardner*, 111 Utah 286, 177 P. 2d 743. In this case there has been neither pleading nor proof of change of circumstances. On the contrary, defendant expressly concedes, in his brief, that there were no

changed conditions between the date of the divorce decree and the petition for modification. Under the rule of the cases above cited, the trial court could not properly make an order modifying the decree.

What defendant is really contending is that the alimony awarded by the interlocutory divorce decree was excessive. His proper remedy would have been to appeal from that decree. A petition for modification is not the proper way to have changed the terms of an erroneous alimony decree.

In point of fact, defendant is in a poor position to complain. He stipulated to an alimony decree of $250 per month, apparently without any expectation of ever complying with it. He is hardly in a favorable position now to assert that the alimony awarded is excessive.

Courts are not to be trifled with by litigants. This is particularly true in divorce cases, which, although not ordinarily involving problems of great legal magnitude, quite frequently involve social problems of the utmost delicacy and importance—problems of such nature that the state, as well as the litigants, has an interest in their solution. A freedom-seeking spouse may not, in his eagerness to be speedily released from his matrimonial bonds, make rash and reckless agreements and promises, upon which the court may rely in fixing the amount of alimony, and then return a few months later and complain that the award for alimony is excessive or unfair. Such is apparently what was attempted in this case.

The judgment is affirmed.

McDONOUGH, C. J., and LATIMER, J., concur.


PRATT, Justice (concurring in the result).

I concur in the result. One cannot escape the conclusion that appellant has not acted in good faith in this matter.

His relegation of his family obligations to a position of least importance in his scheme of life and his desire to acquire the divorce even at the expense of creating, by stipulation, false impressions in the mind of the lower court as to his ability to pay alimony evidence a character weak in moral and ethical standards. As a result his incarceration for contempt does not strike any sympathetic chord in the hearts of those who read about his case. However, if we are not careful we may confuse matters in our analysis by burying important points under a barrage of punitive ideas aimed at appellant. To overemphasize the idea that he has made his thorny bed and now he should lie in it, loses sight of the fact that if he does lie in it, his children may be the real sufferers. Be his character ever so weak, it is not bread and butter in their mouths to carry on the fiction of his ability to support to the extent the lower court found merely because he, in his selfishness was very instrumental in initiating that fiction. They are certainly innocent victims in the case.

It is true that there is no actual change of circumstances shown that would support a modification of the decree, and for that reason I am constrained to concur in affirming the lower court's decision; but I do not feel that under proper circumstances it should require a great deal of evidence to change this decree to fit actual facts rather than possibilities, if it will be to the interests of the children to do so.

In other words, if appellant in good faith acquires a position as fry cook that pays him only union wages, although it will not support alimony of $250 a month, should he not be allowed a modification of the decree upon the theory of a change of circumstances; or is he to be limited in his employment to enough to pay $250 per month alimony, simply because the lower court accepted the implications of the stipulation without inquiry into the actual facts of the case? It would seem to be to the best interests of all concerned to consider actualities in preference to possibilities.

WADE, Justice (concurring in the result).

I concur with the result for the reasons herein stated.

I think the allegations of the petition of the defendant were sufficient to justify a finding that there has been a change in circumstances since the decree was entered requiring a reduction in the amount of the award of alimony and support money, but I do not think the evidence supports such a finding. Defendant's petition alleges in substance that the decree was entered on October 7, 1947, ordering petitioner to pay $250 per month alimony and support money; that the court made no findings of the amount of petitioner's earnings at the time but found him capable of earning $500 per month; and alleged that he was then not capable of earning in excess of $40 per week and that since February 15, 1947, he has earned less than $100 per month. This is not a statement that he was incapable of earning $500 per month at the time of the decree and even if it were, the decree judicially determined that question and for the purpose of this appeal neither the parties thereto or the courts can go behind that determination. But the petition alleges that he is now incapable of earning in excess of $40 per week. In my opinion, that is a sufficient allegation of a change of circumstances since the decree.

However, I do not believe that the evidence would justify a finding that there has been such a change in the circumstances since the decree to justify a reduction in the amount of the alimony and support money award. Plaintiff, in her original complaint, asked for separate maintenance. Therein she alleged that defendant is a capable manager of eating establishments and for a long time as such has earned in excess of $800 per month. Defendant answered by admitting that in the year 1946, as a manager of eating establishments, he had earned an average of $760 per month, but alleged that he was then out of steady employment. Later plaintiff filed an amended complaint wherein she asked for a divorce but still retained the allegations, as to his earning capacity, and defendant thereupon stipulated that his

default might be entered on condition that the award of alimony. and support money should not exceed $250 per month. If the proof was in harmony with these allegations, the court could reasonably find that he was capable of earning $500 per month even though he was not steadily employed at the time.

But now he testifies that he is only a fry cook with a union wage scale of only $40 per week and actually not earning that much. He says that his girl friend, with whom he was keeping company prior to the divorce, purchased an eating establishment on May 16, 1947, and since that time he has worked in that establishment for his room, board, and clothing and a little spending money. He says that when this business gets on a paying basis, and his girl friend gets her bills paid off and he gets his bills paid off, he will then become a partner in the business and then he will be able to pay as much as $25 per week to the support of his former wife and children. In the meantime, he is only a fry cook, not a capable manager of eating establishments and his earning capacity is limited to $40 per week. He makes no claim that he has ever tried to obtain the kind of employment which he used to have or to get any other work than to work for his board and room and clothing where he now works. He says he owes about $200 in debts and indicates that he is not going to have any earnings until he gets that paid off. He also indicates that in the summer of 1948, which is now past, he will be able to pay something to his former wife and children. But that at the time of the hearing the business was not paying sufficient to justify him paying anything to that end.

Under these circumstances the trial court was justified in holding that he had made no reasonable effort to comply with the order of the court and that there is no showing that he is not capable of earning $500 per month if he tried to do so. In other words, he is obviously acting in bad faith

and the court was justified in refusing to believe that he is doing all he can or that his earning capacity has so suddenly decreased.

I therefore concur with the result.