**Ella M. ENDICOTT, Appellant,**

v.

**Jerry L. ENDICOTT, Respondent.**

**No. 24900.**

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

Roger J. Barbieri, Kansas City, for appellant.

Wilbur L. Pollard, North Kansas City, for respondent.

MAUGHMER, Commissioner.

The plaintiff-mother appeals from an order modifying the divorce decree and giving the defendant-father custody of their 15 months' old son. These parents, Ella M. Endicott and Jerry L. Endicott, were married on June 7, 1964, and separated about August 6, 1966. On August 11, 1966, Mrs. Endicott, as plaintiff filed suit for divorce. The defendant filed an answer and cross bill, which he dismissed on January 26, 1967, and on that date plaintiff was granted a divorce. Custody of the minor child, Gregory L. Endicott, then ten months of age, was divided—six months to the mother and six months to the father. As child support, the father was directed to pay $15 per week for three months and $17.50 per week thereafter while the child was with the mother.

On March 31, 1967, (63 days after the divorce) the defendant filed a motion to modify, therein alleging that the health and well-being of the child would be best served if full custody were awarded to him. After hearing testimony and arguments, the court, on May 11, 1967, denied the motion.

On May 29, 1967, (123 days after entry of the divorce decree and 18 days after denial of the first motion) defendant filed a second motion to modify. Therein he alleged that plaintiff and her then husband, Joseph Pasacarella, whom she had married on May 3, 1967, had "severely

beaten, bruised and injured" the child, had demonstrated a "complete lack of love and affection" for him and a disregard for his health and well-being. Testimony was taken on June 14, 1967, and on that same date the court sustained the motion to modify, and awarded custody of the minor child Gregory, who was then 15 months old, to the father. The mother was privileged to have Gregory with her from 9:00 a. m. to 3:00 p. m. on each Sunday.

On appeal and under her "Points and Authorities" plaintiff lists two as follows: 1. "In a proceeding to modify a divorce decree, movant may be successful only upon proof of new facts since last hearing" and 2, "In contests for custody of a child, age of child should be considered, and if all else be equal the child should be given into the custody of the mother." Each of these declarations is a statement of legal principle and not an assignment of error. However, we shall assume appellant intended to assert noncompliance with these legal principles and we shall review the case on the merits.

The transcript before us includes the testimony taken at both hearings which were held on the motions to modify. Plaintiff says the judgment denying the first motion, which was entered on May 11, 1967, is res judicata, and therefore the evidence received on the second motion must be restricted to occurrences and happenings after May 11, 1967.

In child custody cases the welfare of the child is the guiding light. Armstrong v. Armstrong, Mo.App., 185 S. W.2d 845, 847; Lewis v. Lewis, Mo.App., 301 S.W.2d 861, 863; Garbee v. Tyree, Mo.App., 400 S.W.2d 193, 197. When the custody of a minor child is fixed in a divorce decree there can be no change made respecting custody except upon a showing of changed conditions since entry of the decree, Lewis v. Lewis, supra, or upon material facts existing at the time but unknown to or concealed from the court, but then only for the welfare of the child. 27B C.J.S. Divorce, § 317(2)b, page 542; Armstrong v. Armstrong, supra; In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 473. We believe that evidence concerning treatment of the child prior to the hearing on the first motion to modify may be considered at the hearing on the second motion, providing such evidence was not revealed to the court or known by the innocent party at the time of the first hearing.

The defendant testified that he was employed as a mechanic at TWA with earnings of about $650 per month and that his mother (age 59 years) and his father would, if he were given custody of the child, move into and live in his home and care for the child while he was at work. These grandparents had taken care of Gregory for several months from the date of the parents' separation until the divorce was granted. Mr. Endicott said that on a Sunday late in May, 1967, he, accompanied by his parents, went to the home of plaintiff and her present husband to get his son; that his son and Mr. Pascarella came to the door; that "little Greg started to reach out to get me and Joe grabbed him by the shoulder and hauls him back in the house and they wanted me to pay them $70 before I could have him." Defendant said he had brought $30 with him for payment of two weeks' support. He finally gave them $50 and was allowed to take the boy. It was defendant's testimony, however, that before he was able to get the child, Mr. Pascarella had called him vile names, asked him to "around back of the house" and threatened him with bodily harm. Defendant gave this description of the child's condition: "We took him home and started to change his diaper and the poor little thing was black and blue from all down his shoulders, all down his little bottom; it was terrible black and blue marks and even some on his legs." Mr. Endicott took his son to the sheriff's office. Don L. Seneker, Deputy Sheriff of Clay County, viewed the boy's condition

and called Mr. Frank McCracken, Juvenile Officer, who also examined Gregory, Mr. Seneker, Mr. McCracken and defendant's parents all stated that Gregory had black and blue marks on his shoulders on down to his upper legs. On another occasion when defendant got the boy he found his face hot. The child was taken to a hospital where he remained for five days. His condition was diagnosed as German measles with an ear and throat infection.

Both the plaintiff and her present husband, Mr. Pascarella, are employed on a full time basis. He said his earnings amounted to $800 per month. Mrs. Pascarella works at Harzfeld's, sometimes until 8:00 p. m. While she is at work or absent from home, the plaintiff leaves the child in a trailer with a baby sitter. For a while the plaintiff's aunt, Mrs. Namoni Brown, cared for the child while plaintiff worked. Mrs. Brown said that plaintiff stayed out almost every night until after midnight. She phrased it this way: "I could count on my hands the times that girl (plaintiff) came home at a decent time and put the baby to bed." Mr. Pascarella has a child by a previous marriage, who lives with her mother. He was once convicted of molesting a minor child, was fined $500 and given a six months' suspended jail sentence. Mr. and Mrs. Pascarella testified that the bruises on the body of little Gregory were received when he fell from Mr. Pascarella's motorcycle and from running into furniture. Plaintiff said she had gone to church four or five times since the divorce. She said she attended a Catholic church with her husband. Neither knew the name of the parish priest.

■ An appellate court, when reviewing a court tried case, may reach its own conclusion with respect to the evidence and enter the kind of judgment it believes the trial court should have entered. However, an appellate court should defer to the conclusions of the trial judge especially as to matters concerning the credibility of witnesses and should affirm the trial court's decision unless it is found to be utterly wrong and the welfare of the child requires a different disposition. Harwell v. Harwell, Mo.App., 355 S.W.2d 137, 143; Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, 367.

■ Plaintiff says it is the law, all things being equal, that a mother is favored for custody of a young child. We agree the courts have so held, Edwards v. Edwards, Mo.App., 302 S.W.2d 37. However, in the case before us, we believe the evidence shows that plaintiff has neglected the child. She left him with others—during not only her working hours, but during her nonworking hours. He had measles, a throat infection and an ear infection, which plaintiff either did not observe or did nothing about. The evidence strongly indicates that Gregory was abused by plaintiff or her husband, as he evidently had been severely whipped or beaten. Not only did defendant and his parents testify to the severe bruises but disinterested witnesses (deputy sheriff and juvenile officer) did also. Certainly we cannot say that the order of the trial court giving custody to defendant is unsupported by substantial, credible evidence or that the welfare of the child requires that custody be left with the mother for a substantial portion of the time. We not only defer to the conclusion reached by the trial court herein but we are in accord with it.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.