Allen Glade KALLAS, Plaintiff
and Appellant,

v.

Magi Olson KALLAS, Defendant
and Respondent.

No. 16481.

Supreme Court of Utah.

June 23, 1980.

Don R. Petersen of Howard, Lewis & Petersen, Provo, for plaintiff and appellant.

William W. Downes, Jr., Salt Lake City, for defendant and respondent.

STEWART, Justice:

Plaintiff, the father and custodian of the parties' three minor children, appeals from an order awarding overnight visitation rights to defendant, his ex-wife. Plaintiff initially sought to revoke defendant's visitation rights after he had learned of his ex-wife's homosexual practices and drug use. In response defendant moved for an order to enlarge her visitation rights to include overnight visitation. After a trial on the matter, the trial court awarded overnight visitation rights to the defendant on a semi-monthly basis.

On appeal plaintiff asserts error in the trial court's refusal to hear testimony as to his wife's sexual inclinations, which existed prior to the divorce but were first made known to plaintiff after the divorce, and in the court's refusal to admit the testimony of a psychologist based on interviews of the three children and their out-of-court statements. Plaintiff also contests the award of attorney's fees without an evidentiary hearing on the matter. We reverse and remand.

Plaintiff and defendant were divorced on August 23, 1977. At that time, plaintiff

was unaware of any fact or condition which would raise a question as to defendant's fitness as a custodian for the children and therefore did not seriously object to the award of custody to her of their three minor children. Within a few weeks after entry of the divorce, defendant resigned as custodial parent and signed a stipulation for change of custody. Plaintiff was granted custody on September 23, 1977, subject to reasonable rights of visitation in the defendant. On January 26, 1978, defendant filed a motion to set aside the order changing custody, but that motion was never heard. Defendant saw the children approximately three or four times between the relinquishment of custody and the time of the current trial. She made arrangements to visit the children on additional occasions, but failed to appear. It was during this period that plaintiff for the first time discovered that defendant had been using drugs and that she was a lesbian.

■ At the trial for modification of custody, plaintiff proffered testimony of two female witnesses which would have shown defendant made advances of a sexual nature to one of them, a young girl, and approached the other for purposes of trafficking in drugs. The evidence was excluded by the court on the ground that the acts occurred prior to the decree of divorce. Plaintiff acknowledges the general rule that evidence at a custody modification hearing is limited to those changes which occurred subsequent to the prior decree. *Perkins v. Perkins*, Utah, 522 P.2d 708 (1974); *Gale v. Gale*, 123 Utah 277, 258 P.2d 986 (1953); *Baker v. Baker*, 119 Utah 37, 224 P.2d 192 (1950); *Osmus v. Osmus*, 114 Utah 216, 198 P.2d 233 (1948). Nevertheless, plaintiff contends that he had no knowledge prior to the divorce of defendant's use of drugs or of her homosexuality. It appears that those matters could not have been discovered with reasonable diligence and considered in the initial trial, and because they are directly relevant to the issue of the nature of visitation rights which should be accorded, they should have been admitted in the hearing below.

■ Notwithstanding a stipulation which was made prior to the hearing and which admitted defendant's lesbianism and former drug problem, the trial court's exclusion of evidence regarding defendant's behavior and conduct in specific instances in regard to these matters necessarily prevented the trial court from making the most informed and prudent decision concerning the issue of how expanded visitation rights might affect the children. Plaintiff proffered testimony of defendant's sexual advances to a thirteen-year-old female neighbor in the defendant's home, as well as in a sleeping bag when defendant, the neighbor, and others were sleeping outdoors. Such evidence bears clearly on the defendant's ability to deal appropriately with the three minor children (two girls, age nine and five, and one four-year-old boy), the most appropriate duration for any visits allowed, and, most importantly, the psychological impact on the children resulting from more extended visits with a mother who may, as a role model, at least to some extent cause serious conflict in the minds of the children concerning certain basic life-styles.

The Utah cases cited above do not address the issue of the admissibility of evidence not known at the time of the prior hearing. As to newly-discovered evidence, we are in accord with the rule stated in *Laughton v. Laughton*, 71 Wyo. 506, 259 P.2d 1093 (1953):

> "To justify a substantial modification there must be a change of circumstances or the discovery of material facts unknown to the court at the time of the original decree. The welfare of the child is controlling, and in determining this a number of factors may be considered." [259 P.2d at 1095.]

Other courts have adopted the same rule. See, e. g., *Gantner v. Gantner*, 39 Cal.2d 272, 246 P.2d 923 (1952); *Endicott v. Endicott*, Mo., 435 S.W.2d 388 (1968); *Youngberg v. Youngberg*, 193 Neb. 394, 227 N.W.2d 396 (1975); *Gibbons v. Gibbons*, Okl., 442 P.2d 482 (1968). We hold it was error for the district court to refuse to hear the proffered testimony.

Plaintiff further contends that the court erred in excluding the testimony of Dr. Cundick, a professor of psychology at the Brigham Young University who specializes in child development and has had eighteen years' experience. His qualifications as an expert were unquestioned. His testimony was excluded on the basis that his opinion as to the appropriateness of overnight visitation with the mother was based at least in part on information obtained from the three children and the plaintiff and was thus based in part on hearsay.

■ The hearsay rule excludes extrajudicial utterances when offered as proof of the truth of the matter asserted. Rule 63, Utah Rules of Evidence. The children's statements to the psychologist in this case are not used for hearsay purposes. See *Sine v. Harper*, 118 Utah 415, 222 P.2d 571 (1950). Defendant's claim that the children's statements concerning the mother were hearsay must be considered in light of the purpose for which such statements were used by the psychologist. The statements are circumstantial evidence of the states of mind of the children at the time of the interviews. Based on traditional hearsay analysis, the declarations are facts from which their states of mind may be inferred in the same manner that the children's appearance, behavior, and actions in general may be circumstantial evidence of their states of mind. The children's statements are used basically inferentially by an expert trained to make such inferences and are not within the hearsay rule. *McCormick on Evidence* § 294 (2nd ed. 1972).[1] The state-

ments are useful without respect to the truth of the matter in the statements and therefore need not be analyzed with respect to the state of mind exception to the hearsay rule. *Betts v. Betts*, 3 Wash.App. 53, 473 P.2d 403 (1970).

In allowing testimony in a custody hearing based on out-of-court statements of the child, *Callen v. Gill*, 7 N.J. 312, 318, 81 A.2d 495, 498 (1950), held such testimony "not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts . . . ."[2]

Accordingly, we hold that the trial court erred in refusing to admit the testimony of Dr. Cundick on the ground it was based on out-of-court statements of the children.

■ A more difficult issue is whether it is permissible to admit Dr. Cundick's conclusion if it were based in part upon statements made by the father. Although the statements may involve elements of hearsay, they may also contain observations concerning the mental and emotional condition of the children and their behavior with respect to their mother and to him. Such evidence would be helpful to a psychologist in making a proper evaluation of the children, their states of mind, and their relationship to the parents. We do not mean to be understood to hold that a psychologist can be made a conduit for testifying in court as to any or all out-of-court statements made to him. However, a psychologist's expertise involves examination and diagnosis based on verbal expressions, and

1. It is possible that at least some of the children's statements to the psychologist are assertive of propositions of fact relevant to the disposition of the case. However, a psychological examination, while perhaps necessarily taking such statements into account for their truth value, would have to be weighed against psychological test results, if they are administered, and interview techniques of the psychologist which tend to disclose exaggeration and untruthfulness. In any event, close cross-examination of the psychologist will demonstrate the soundness of the basis of the opinion rendered.

2. We agree with the Supreme Court of New Jersey in *Callen v. Gill, supra*:

The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts; and instances of it in the present case were few and unimportant. [7 N.J. at 318, 81 A.2d at 498.]

some weight should be accorded the ability of a trained psychologist to evaluate properly information gleaned from an interview which is used to support a conclusion. Furthermore, when the best interests and welfare of children are the major issues, it is appropriate for the court to receive all information that can be provided by an expert which assists the court in reaching the best result, especially when, as in this case, the testimony of both the psychologist and the father would be subject to the purging effect of cross-examination. The interests of reliability are thereby adequately served, and the availability of expert testimony is maintained.

 The children's relationship to their mother as perceived by the children, and indeed their perception of themselves and their mother, were proper subjects of inquiry by a psychologist, particularly as they bear upon the effect that expanded visitation rights might have on children. This is particularly true in light of the stipulation that defendant was and is a lesbian. The evidence of her living and sleeping arrangements at her residence and her limited contact with her children since the divorce constituted sufficient foundation for Dr. Cundick to evaluate the advisability of the proposed expanded visitation arrangements with respect to the welfare of the children. His testimony would not exceed the limits placed on expert testimony in the form of opinions set forth in Rule 56(2), Utah Rules of Evidence.

Plaintiff specifically objects to the overnight visitation in the presence of defendant's lesbian lover. Plaintiff urges that the benefit which might be received through the children's association with their mother on an overnight basis could be obtained through more appropriate alternatives without running the risk of placing the children in the position of being torn by the very different lifestyles of their father and mother.

Other courts have arrived at various solutions in somewhat similar situations. Gen-erally, some kind of restriction is placed on visitation rights. For instance, in *In re Jane B.*, 85 Misc.2d 515, 380 N.Y.S.2d 848 (1976), the court banned overnight visits and prohibited the mother from taking the children to the mother's residence while the lesbian lover or other homosexuals were present. The court also forbade the mother to involve the child in any homosexual activities or publicity. Similarly, the court in *In re J.S. & C.*, 129 N.J.Super. 486, 324 A.2d 90 (1974), concluded that unrestricted visitation would not be in the best interest of the children and prohibited a homosexual father from cohabiting or sleeping with any individual other than a lawful spouse when the children were present. The court also prohibited the father from taking the children to homosexual gatherings or into the presence of his lover. In *DiStefano v. DiStefano*, 60 App.Div.2d 976, 401 N.Y.S.2d 636 (1978), visitation rights were conditioned upon the exclusion of the mother's lesbian lover from the children's presence.

 A child custody proceeding is equitable in nature and must be based primarily and foremost on the welfare and interest of the minor children. *Hyde v. Hyde*, 22 Utah 2d 429, 454 P.2d 884 (1969). A court must, in a custody dispute, give the highest priority to the welfare of the children over the desires of either parent. *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946). The same general principles apply in determining visitation rights. Although a parent's sexuality in and of itself is not alone a sufficient basis upon which to deny completely a parent's fundamental right, the manifestation of one's sexuality and resulting behavior patterns are relevant to custody and to the nature and scope of visitation rights. *In re J.S. & C., supra.*

 Trial courts have continuing jurisdiction to consider motions to modify dealing with child custody and visitation rights.[3] The appropriate award is within the trial court's discretion and is to be reversed only upon abuse of that discretion.

---

**3.** *Enyart v. Comfort*, Okl., 591 P.2d 709 (1979), has found such jurisdiction to exist even while appeal from the last adjudication on such matter is pending.

Failure to consider pertinent facts makes it impossible for the trial court to exercise a fully informed discretion. The possibility, or even the certainty, of a future modification hearing does not make it any less imperative to review the order in question now based on an exercise of discretion with an inadequate foundation, because the decision may now affect the well-being of the children involved in subtle, but important ways.

In this case the trial court, after it has heard all the evidence, may deem it appropriate to reconsider the overnight visitation privileges, or it may reach some other decision. But in any event, the decision should be based on all relevant evidence as to the children's present and future well-being.

Plaintiff also contends that the court abused its discretion in awarding the defendant attorney's fees. The matter was not presented in the motion for visitation rights. Attorney's fees were first requested by oral motion at the close of the hearing. A memorandum supported by an affidavit, which merely set forth the number of hours spent and the hourly rate, was then filed.

Section 30–3–3, U.C.A. (1953), provides for an award of attorney's fees in actions for the support and maintenance of children:

> The court may order either party to pay to the clerk a sum of money for the separate support and maintenance of the adverse party and the children, and to enable such party to prosecute or defend the action.

This Court stated in *Anderson v. Anderson*, 13 Utah 2d 36, 368 P.2d 264 (1962), that in order to provide sufficient protection for the interests of the children involved, attorney's fees may be awarded in custody modification actions, provided need for an award is demonstrated. See also *Weiss v. Weiss*, 111 Utah 353, 179 P.2d 1005 (1947). The allowance of attorney's fees lies within the discretion of the trial court. *Openshaw v. Openshaw*, 80 Utah 9, 12 P.2d 364 (1932);

*Burtt v. Burtt*, 59 Utah 457, 204 P. 91 (1922). However, a proper determination of whether fees should be awarded and the amount, if any, cannot be made without an examination of the facts. *Anderson v. Anderson, supra*. Because there was no presentation of facts establishing defendant's financial need accompanying the motion, the award was inadequately supported.

The decision of the trial court is reversed, and the case is remanded for reconsideration by the trial court in light of this opinion.

MAUGHAN and WILKINS, JJ., concur.

HALL, Justice (dissenting):

I respectfully dissent, for I remain unpersuaded that the trial judge abused his discretion, either in his evidentiary ruling or in the ultimate order appealed from.

The fact that the trial judge was fully cognizant of the sensitive nature of the issues presented for determination is adequately reflected in the content of his order.

It is first to be noted that the order is only temporary, and specifically provides for a review by either party after six months. Should an earlier review be necessary, either party may of course seek it under the ongoing jurisdiction of the court in such matters.[1]

In addition, the order restrains the defendant from doing or saying anything "in the presence of the minor children of the parties which directly or indirectly touches upon her lifestyle or sexual preferences in general." Likewise, the order restrains the plaintiff from doing so.

Further, the order prohibits visitation during such times as there is a male occupant of defendant's residential premises.

I can only conclude that the trial court has the situation in hand, and that his order should not be prematurely disturbed. I view this as a "wait and see" situation which can best be handled at the trial level.

---

1. Provided for by U.C.A., 1953, 30–3–5.

Insofar as the award of attorneys' fees is concerned, it lies within the prerogative of the trial court to determine if an award is to be made. In this instance, the record supports the order making an award since it was shown that fees were necessarily incurred, that defendant was in need of assistance in the payment thereof, and that plaintiff had the ability to contribute.

I would affirm.

CROCKETT, C. J., concurs in the dissenting opinion of HALL, J.

