[No. 171-2. Division Two. July 20, 1970.]

MICHAEL E. BETTS, *Respondent,* v. RITA A. BETTS, *Petitioner.*

*Brodie, Fristoe & Taylor* and *Don W. Taylor*, for petitioner.

*Parr, Alexander & Cordes* and *Gerry L. Alexander*, for respondent.

ARMSTRONG, C. J.—Defendant Rita A. Betts, now Rita A. Caporale, appeals from a judgment modifying a California divorce decree which had awarded her custody of the children of the parties. In modifying the divorce decree the trial court awarded custody of the 5-year-old daughter, Tracey Lynn, now the sole child of the parties, to plaintiff Michael E. Betts.

The mother's assignments of error raise three contentions:

(1) The superior court of this state did not have jurisdiction to modify the California divorce decree.

(2) Out-of-court statements of the child, relied on by the trial court, were inadmissible because they constituted hearsay evidence, and for the further reason that the child was not qualified to testify as a witness.

(3) The trial court abused its discretion in modifying the California decree by changing the custody from the mother to the father.

While the parties were residing in California defendant wife sued for divorce. An interlocutory decree was entered on July 19, 1967 which granted custody of the children to the wife. The final decree of divorce, which incorporated all of the terms of the interlocutory decree, was entered on September 6, 1968.

In April, 1968, the wife took the children to her parents' home in Lewis County, Washington. She then returned to California and completed her move to her parents' home in July, 1968. On August 1, 1968 she and the children moved to Lacey in Thurston County, Washington, where she resided with Raymond Don Caporale. The plaintiff husband continued to reside in California.

On August 6, 1968, 2-year-old James Michael Betts, the minor son of the parties died. An autopsy revealed internal

injuries as well as multiple bruises on the head and body. The probable cause of the death was disputed by expert medical testimony. There was testimony that the injuries were caused by accidents.

When the police took possession of the premises for investigation the wife moved back to her parents' home with her 5-year-old daughter, Tracey Lynn, the subject of this custody action.

On August 9, 1968, the Thurston County Juvenile Court entered an ex parte order placing Tracey Lynn in the protective custody of the chief juvenile probation officer for the expressed reasons that her mother could not provide a fit place of residence for her and because she was needed as a material witness in the prosecution of a homicide charge against Raymond Don Caporale, who had been living with the mother.

A juvenile court hearing was later held in early September, 1968 and the juvenile court ordered "that Tracey Lynn Betts shall be made the temporary ward of the Thurston County Juvenile Court and placed under the control and jurisdiction of the Thurston County Juvenile Probation Officer for placement in a supervised foster home." The court entered findings of fact in support of the order which referred to certain stipulated facts which are not incorporated in the order.[1] The juvenile court explicitly assumed

---

I

[1]"That this is an unusual case requesting the Court to take temporary custody in view of the fact that the child is listed as a material witness in a criminal case filed in Thurston County, and the Court must so treat it without comment.

II

"That the material witness statute as found in R.C.W. 10.52.040 would not be an appropriate procedure for the prosecution to take in regard to this criminal case and the proper method is the method which has been used by use of the Juvenile Court through a dependency action.

III

"There are many facts to be determined in the criminal cause of which this minor child is listed as a material witness which are not proper subjects for the Juvenile Court hearing. All parties have stipulated to certain facts and they are adopted by the Court.

custody and control of the child to hold her as a material witness but implicitly placed the child in protective custody because of home conditions, although the findings of fact in the order entered after the hearing do not refer to the conditions which affected the fitness of her mother's home.

At the time of the death of her son, the defendant wife intended to make Washington her home. At the time of the juvenile court hearing in September, 1968, plaintiff Michael E. Betts was a resident of the state of Washington and Rita A. Betts was residing with her parents in Lewis County, Washington. Shortly after the hearing Rita A. Betts left the state of Washington and has resided in the state of California since that time.

In August of 1968 Raymond Don Caporale was charged with murder in the second degree for the death of the minor son of the parties to this action. During the fall of 1968, Caporale was tried. The jury was unable to reach a verdict. The action was subsequently dismissed with a finding that the evidence admitted in the criminal trial was insufficient as a matter of law to warrant the conviction of Caporale.

Michael Betts remarried on July 26, 1969 and he and his wife have established their home in Aberdeen, Washington. Rita Betts married Raymond Don Caporale on November 2, 1968 and they established their home in California.

The daughter, Tracey Lynn, remained in Washington in a foster home. On October 21, 1968, Michael E. Betts commenced an action in Thurston County to obtain custody of the daughter. A hearing was held in December, 1969. Defendant, Rita A. Betts, now Caporale, appeared to contest the modification proceedings and challenged the jurisdiction of the court. The trial court granted custody of the daughter to the father, Michael E. Betts.

The mother's first contention is that the trial court lacked

IV
"Any facts or stipulations are not admissions or to be used in the criminal cause against Raymond Don Caporale, which is Thurston County Criminal Cause No. C-3491."

jurisdiction because her domicile was in California and the domicile of the child follows that of the parent who has legal custody of the child.

 The mother testified that at the time of the death of the 2-year-old son, she was living in Thurston County and intended to make the state of Washington her permanent home. She moved back to her parents' home in Chehalis after the law enforcement officers took possession of her home in Lacey, Washington. It is not denied that the mother and daughter were domiciled in Washington at the time of the juvenile court hearing. The conjunction of establishing a home in Washington and the intention to remain permanently in this state is sufficient to establish domicile in Washington. *In re Mullins,* 26 Wn.2d 419, 174 P.2d 790 (1946). The daughter's domicile, under the the traditional rules, followed that of the parent who had legal custody of the child. *In re Mullins, supra;* Restatement, Conflict of Laws § 32 (1934). Hence, Washington had jurisdiction over both the mother and the daughter at the time of the juvenile court hearing.

The daughter was made a temporary ward of the juvenile court for the explicit reason that she be kept available as a witness in the criminal proceedings against Caporale, who was then her mother's paramour. Implicit in the order, and obviously not spelled out to protect the constitutional rights of Caporale, was the need to furnish protective custody for the child because of the possibility of injurious living conditions. The child was clearly a dependent child even though the order entered after the juvenile court hearing did not spell out the conditions which created the status of dependency. Although we do not have the record of the juvenile court hearing, the record in the modification hearing is replete with evidence which would sustain such a finding.

 In proceedings under the juvenile court law, where the court is called upon to determine the custody of a child, the principle that the welfare of the child is the paramount consideration has become firmly established.

This principle has been so fully recognized that it must be presumed in any given case that the trial judge had that principle in mind and conscientiously endeavored to apply it to the facts of the case. The judgment of the juvenile court judge will not be disturbed except for manifest abuse of discretion. *Fuhrman v. Arvin,* 21 Wn.2d 828, 153 P.2d 165 (1944). There was no appeal from the order creating wardship of the child in the juvenile court and that order effectively terminated the mother's custody and control of the child until further order of the court. Furthermore, the jurisdiction of the juvenile court was not challenged in the modification action or in this appeal.

■ After the juvenile court hearing the mother returned to California and demonstrated that she had established her domicile in that state. She could not, however, change the domicile of the child because the child remained a domiciliary of the state of Washington by virtue of the order of the Juvenile Court for Thurston County. If she wished to divest the juvenile court of wardship of the child, she should have petitioned the court for a revocation or modification of its order establishing wardship, custody and control. *Johnson Adoption Case,* 399 Pa. 624, 161 A.2d 358 (1960). *See In re Parker,* 49 Wn.2d 104, 298 P.2d 520 (1956). At the time the action to modify the California decree was commenced, the child was domiciled in the state of Washington. We hold, therefore, that the trial court had jurisdiction of the child, Tracey Lynn, and authority to change her custody in the proceedings to modify the California decree of divorce. The rule is well established that courts of the domiciliary state of the child may assume jurisdiction where there is a showing of a change of conditions and circumstances arising since the entry of a decree in a sister state determining their custody. *See State ex rel. Marthens v. Superior Court,* 25 Wn.2d 125, 169 P.2d 626 (1946).

The mother's next contention is that certain statements made by the daughter to her foster mother were inadmissible because they were hearsay statements.

The foster mother saw an item in the paper relative to the remarriage of the child's mother and with reference to it, testified as follows:

A. So I told her that her mama and Mr. Ray Caporale had got married, and she started crying. She said, — she ran and put her arms around me and her head in my lap and started crying real bad and hard and said, "He killed my brother and he'll kill my mommie too,"—and she doesn't seem to ever get that out of her mind. Q. Does she say this often? A. Yes, she tells all her friends—explains why she is with us, and she goes into this tale, and I don't seem to be able to get her not to tell her problems to outsiders. Q. Did she ever make statements about this prior to the incident you have just mentioned, which apparently occurred after the trial? A. Yes, yes, she started telling about her little brother was in heaven and how he had gotten there and she always blamed him for it. Q. By "him," who do you mean? A. Mr. Caporale. Q. Has anyone in your presence tried to pull this information out of this child? A. No, because I didn't want to worry her. When she talks, we let her talk; but we don't try to change her mind, one way or the other, because we aren't there to do that—just give her a home.

The foster mother further stated, "She always mentioned, 'He's mean.' That is the word she uses—'He's mean.'"

We hold that use of this testimony does not violate the hearsay evidence rule.

The hearsay evidence rule prohibits the use of testimony in court, of a statement made by another person out of court, which is being offered to show the truth of the matter asserted therein. Such evidence derives its value, not solely from the credibility of the in-court witness himself, but also in part, from the veracity and competence of the person who made the out-of-court statement. *Moen v. Chestnut,* 9 Wn.2d 93, 113 P.2d 1030 (1941); 2 B. Jones on Evidence § 268 (1958).

The statements of the child were not admitted to prove the truth of the assertions she made, but merely to indirectly and inferentially show the mental state of the child at the time of the child custody proceedings.

In finding of fact 18, the trial court stated in part: "The fact that said statements had been made would tend to create a strained relationship between said Tracey Lynn Betts and her step-father, Raymond Don Caporale, and her mother, should she be awarded to her mother."

Professor Meisenholder[2] has made the following pertinent remarks concerning the admissibility of such statements:

> Out-of-court statements are often circumstantial evidence of the declarant's state of mind when his state of mind is relevant in a case. Evidence of such statements is not hearsay under the classic definition of hearsay. The Washington cases contain many illustrations of this principle.

(Footnotes omitted.) 5 R. Meisenholder, Wash. Prac. § 383, at 387 (1965).

It should be pointed out that there is a distinction between non-hearsay statements which circumstantially indicate a present state of mind *regardless of their truth*, and hearsay statements which indicate a state of mind *because of their truth*. The state of mind must be relevant in either instance. The distinction is based upon the question of whether the statement shows the mental state *regardless of the truth of the statement*. The distinction is usually disregarded in the cases because the statement will usually be admissible either under the exception to the hearsay rule or under the theory that it is not hearsay. 5 R. Meisenholder, *supra* §§ 383 and 473. In this case the distinction is important because if the statement is admitted as an exception to the hearsay rule, certain reliability requirements must be met. *See Raborn v. Hayton*, 34 Wn.2d 105, 208 P.2d 133 (1949).

An obvious example of an out-of-court non-hearsay statement which circumstantially indicates a state of mind regardless of the truth of the statement would be "I am Napoleon Bonaparte." This would be relevant in a sanity hearing.

[2]Robert Meisenholder, Professor of Law, University of Washington.

The statements in question in this case are clearly non-hearsay statements which circumstantially indicate a state of mind regardless of their truth. Since they were relevant, they are admissible.

The mother further contends, however, that the out-of-court statements would not be admissible because the child was not competent to testify in court. At the time of the hearing she was 5 years old.

We need not decide whether hearsay statements introduced under an exception to the hearsay rule must be made by someone who is competent to testify as a witness. We note, however, that res gestae utterances of a child who would probably not have been competent as a witness were held admissible in *State v. Lounsbery,* 74 Wn.2d 659, 445 P.2d 1017 (1968), and *Johnston v. Ohls,* 76 Wn.2d 398, 457 P.2d 194 (1969). It was suggested in an article, C. Stafford,[3] *The Child as a Witness,* 37 Wash. L. Rev. 303 (1962), that the better rule would be that with the exception of res gestae utterances, all hearsay statements introduced under any exception to the rule should be made by someone competent as a witness at the time the statement was made.

However, we are not considering the testimony of the 5-year-old child as an exception to the hearsay rule, but as a non-hearsay statement which circumstantially indicates the state of the child's mind regardless of the truth of the statement. Under such circumstances, the statement would be admissible even though the child may not have been competent to serve as a witness in the case.

We agree with the Supreme Court of New Jersey in *Callen v. Gill,* 7 N. J. 312, 318, 81 A.2d 495 (1951), wherein the court stated:

> The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders

---

[3]The Honorable Charles F. Stafford, then Judge of the Superior Court, now Justice of the Washington State Supreme Court.

upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts . . .

We conclude that the rule, that out-of-court non-hearsay statements may be admitted which circumstantially indicate a state of mind regardless of the truth of the statement, is especially applicable in child custody proceedings. The mental state of the child is an important element in determining what is best for the child's welfare. The trial court should consider the truth of the child's assertion only if such statements meet the reliability test required of the "present state of mind" exception to the hearsay rule. *See Raborn v. Hayton, supra.*

The mother's final argument is that the trial court abused its discretion in awarding the child to the father. She seeks to buttress her argument by the finding of the trial court that she, as well as the father, was a fit and proper person to have custody of the child.

Where the superior court of this state has jurisdiction to modify the child custody award of a foreign divorce decree, the court can do whatever the sister state could do in modifying custody provisions of its divorce decree. *In re Hollibaugh v. Prosser,* 58 Wn.2d 18, 360 P.2d 737 (1961), citing *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903 (1947).

California case law provides that one who seeks a modification of a custody provision in a divorce decree must prove a change of conditions and that a change of custody would be in the best interest of the child. The application to change custody is addressed to the sound discretion of the trial court and its order will not be reversed except on a clear showing of an abuse of that discretion. *Kelly v. Kelly,* 75 Cal. App. 2d 408, 171 P.2d 95 (1946). Washington follows essentially the same rules. *See Cumbie v. Cumbie,* 61 Wn.2d 669, 379 P.2d 918 (1963).

The trial court had before it substantial evidence to find a change of conditions. The death of the child's brother, the murder trial of the present stepfather and the child's feelings toward her stepfather would justify the trial court's determination that her welfare would be best served by awarding custody of the child to the father. We find no abuse of discretion.

The judgment is affirmed.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied August 11, 1970.

Review denied by Supreme Court September 22, 1970.