In re MARRIAGE OF P.K.A.
and J.E.A.

P.K.A., Plaintiff-Respondent,

v.

J.E.A., Defendant-Appellant.

No. 14579.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 1987.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
March 3, 1987.

William F. Washburn, Quigley & Washburn, Eldon, for plaintiff-respondent.

Gene A. Hilton, Hilton and Bennett, Camdenton, for defendant-appellant.

PREWITT, Presiding Judge.

One child, a male, was born of the parties' marriage. When that marriage was dissolved in 1982, respondent, his mother, received custody of the child and appellant, his father, was granted certain visitation rights including temporary custody of him. In the fall of 1984 respondent refused to let appellant take the child at his scheduled time. In response appellant filed a motion asking that she be held in contempt.

After a hearing on that motion the trial court found that respondent failed to follow the terms of the decree but that she was justified in doing so. It found that she was not in contempt and amended the dissolution decree to allow appellant only supervised visitation with the child. Appellant complains of both actions. Here and at trial appellant challenged the admissibility of statements the child, then four, made to others indicating that appellant had sexually abused the child. He argues that the statements were inadmissible hearsay.

In civil contempt matters, an appellate court will not disturb the decision of the trial court, unless it believes the ruling was a clear abuse of discretion. *Bopp v. Bopp*, 671 S.W.2d 348, 352 (Mo.App.1984); *Shanks v. Shanks*, 603 S.W.2d 46, 48 (Mo. App.1980).

In child custody and visitation cases, courts impose the harsh sanction of contempt upon a parent only if disobedience of the court's decree is willful and intentional. *Bopp v. Bopp*, supra, 671 S.W.2d at 352; *Shanks v. Shanks*, supra, 603 S.W.2d at 48. See also *Blair v. Blair*, 600 S.W.2d 143, 146 (Mo.App.1980) (To be in contempt for denial of visitation, it must be done "intentionally and contumaciously").

Appellant contends that good cause was not established because "all testimony as

to the alleged sexual abuse was by witnesses who based their testimony and opinions upon out of court statements made to them by the four year old child."

Respondent testified that she had observed the child "shaking his leg on the floor, and he stood up and his penis was erect." When respondent asked the child what he was doing, he answered, "Oh, Eddie does this to be [sic] all the time." The child calls his father Eddie. Respondent testified that later that evening the child "just started talking to me. He says, 'Every time I go to Eddie's ...' he says, '... he do this to me.' He says—You know, and his penis was hard." Respondent was asked, "Did he demonstrate any acts of masturbation or fellatio, or anything of that sort?" She replied, "Yes, he did." [1]

Respondent took the child to a psychologist two days later. He testified the child said that Eddie had kissed him on his "ding-dong", his word for penis, and that the child demonstrated this with a doll. He concluded that the child had been "sexually manipulated" by his father.

In considering the contempt ruling it may not be necessary to determine if evidence of the statements which the child made to others would have been admissible in court to show that appellant abused the child. Respondent might have had a good faith belief which could justify her action based on hearsay statements that were not admissible to prove the facts stated but could be considered in determining if she had good cause for not following the decree.

However, if the statements the child made to his mother and to the psychologist were not admissible for their truth there would have been insufficient evidence to sustain the modification. Thus it must be determined if the trial court could consider the statements to prove the facts asserted.

The testimony of the mother and psychologist as to what the child said was hearsay and ordinarily inadmissible. Compare *C.R.K. v. H.J.K.*, 672 S.W.2d 696 (Mo.App. 1984); In *Interest of A.R.S.*, 609 S.W.2d 490 (Mo.App.1980).[2] We find no traditional exception to the hearsay rule which would allow the statements to be admissible for their truth.

■ The statements here were not related to diagnosis or treatment and the child would not have as a reason for telling the truth the desire to receive proper treatment. The psychologist was not treating the child and the rationale behind the rule which sometimes allows a physician to reveal what he has been told does not apply here. See *United States v. Iron Shell*, 633 F.2d 77, 83–84 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

The "state of mind" exception does not allow the child's statements to be admissible for their truth. Out-of-court statements which indicate a state of mind regardless of their truth may be admissible. *State v. Gardner*, 558 S.W.2d 395, 399 (Mo. App.1977). See also *People v. Cavalier*, 41 Colo.App. 119, 584 P.2d 92, 93 (1978). See also *Kallas v. Kallas*, 614 P.2d 641, 644 (Utah 1980); *Betts v. Betts*, 3 Wash.App. 53, 473 P.2d 403, 407–408 (1970).

In some situations the state of mind exception might allow statements of a child to be considered if the belief of the child is

---

**1.** On the admissibility of evidence of a change in a child's behavior where abuse is an issue, see *State v. Burke*, 719 S.W.2d 887, 889–890 (Mo. App.1986); *People v. Meacham*, 152 Cal.App.3d 142, 199 Cal.Rptr. 586, 594–595 (1984).

**2.** In certain criminal matters such evidence might be allowed. See § 491.075, RSMo Supp. 1985. Other jurisdictions have also adopted statutes regarding the admissibility of such statements. See 1986 Ariz.Legis.Serv. Ch. 239 § 2. § 13–1416 Abuse or Neglect of Children—Hearsay Exception—Out of Court Statements or Conduct (Apr. 29, 1986) (West); Cal.Evid.Code § 1228 (Cum.Supp.West 1986); Colo.Rev.Stat. § 13–25–129 (Cum.Supp.1986); Ill.Rev.Stat. Ch. 38 § 115–10 (1984); Ind.Code Ann. § 35–37–4–6 (1985); Kan.Stat.Ann. § 60–460(dd) (Cum.Supp. 1986); Md.Fam.Law (1984) Code Ann. § 9–101 (Cum.Supp.1986); Minn.Stat. § 595.02(3) (Cum. Supp.1987); N.Y.Fam.Ct. Act § 1046(a)(vi) (amended 1985) (McKinney 1986); S.D.Codified Laws Ann. § 19–16–38 (Cum.Supp.1986); Utah Code Ann. § 76–5–411 (Cum.Supp.1986); Vt. Stat.Ann.V.R.E. § 804a (Cum.Supp.1986); Wash.Rev.Code § 9A.44.120 (Cum.Supp.1986).

such that whether or not the statement is true the belief of it would be grounds for limiting visitation. An example would be where a child is afraid of a parent or stepparent. See *Betts v. Betts*, supra.

■ In this case, even if the state of mind exception would allow the child's statements, that evidence would not justify restrictions on the father's visitation unless it could be considered for its truth. If the child mistakenly believed that the father had done the things the child related, that mistaken belief would not be a sufficient ground for restricting visitation. If the statements were erroneous, allowing the father to see his child could correct rather than continue that belief. Thus, it might be in the child's best interest that the father have unrestricted visitation.

The necessity to have statements of a child indicating abuse considered for their truth calls for a special hearsay exception. J. Bulkley in Evidentiary Theories for Admitting a Child's Out-of-Court Statement of Sexual Abuse at Trial, Child Sexual Abuse and the Law, ABA National Legal Resource Center for Child Advocacy and Protection, 153, 161 (3d ed. 1982) advocates such an exception:

"as long as guidelines for admissibility are clearly established within which courts can properly exercise their discretion. Only then will the intent of the rules of evidence be carried out, namely, that they be applied 'to the end that the truth may be ascertained and proceedings justly determined' ".[3]

■ Where the best interest of the child is the primary concern, we believe that the courts should consider those statements for their truth. Although it may be an unfavorable reflection on the father if he has not been abusing the child, the paramount consideration must be the welfare of the child.

This type of abuse would not often occur in the presence of persons competent to testify. Where there is a substantial basis to believe that the statements of the child are true, courts are justified in hearing and considering them to prevent further or potential abuse to a child. On the reliability of children's statements to others, see *State v. Reidhead*, 146 Ariz. 314, 705 P.2d 1365, 1371–1372 (App.1985) (Hathaway, J., dissenting). See also *State v. Campbell*, 299 Or. 633, 705 P.2d 694, 705 n. 11 (1985).

Flexibility is needed in these cases, even where the child might be qualified to testify, because of the emotional trauma that such an experience may cause. It is desirable to avoid the necessity of forcing a young child to testify as to abuse, particularly when the abuser is the victim's parent. See *State v. Boodry*, 96 Ariz. 259, 394 P.2d 196, 199 (1964), cert. denied 379 U.S. 949, 85 S.Ct. 448, 13 L.Ed.2d 546 (1964). See also *Bertrang v. State*, 50 Wis.2d 702, 184 N.W.2d 867, 870 (1971).

This exception should support efforts to prevent child abuse. It is to be used only where abuse may have occurred, or has been threatened, and the child might not be competent or reasonably expected to testify to it.

Ordinarily, child custody matters are initially decided by a trial judge. By virtue of experience and training the judge should be able to properly consider such evidence and determine its weight. "Due regard must be given to the trial court's opportunity to judge the credibility of witnesses, and to evaluate the intangibles which do not appear in the record in child custody cases." *In re Marriage of Powers*, 527 S.W.2d 949, 952 (Mo.App.1975).

■ Here, the trial judge heard the testimony of both parties and the psychologist. She apparently believed that respondent and the psychologist were in good faith telling the truth, that the child's state-

3. For further information and discussion of this problem see Comment, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum.L.Rev. 1745 (1983); J. Bulkley "Evidentiary and Procedural Trends in State Legislation and Other Emerging Legal Issues in Child Sexual Abuse Cases, 89 Dick.L. Rev. 645 (1985); Comment, Child Sexual Abuse in California: Legislative and Judicial Responses, 15 Golden Gate U.L.Rev. 437 (1985); Comment, Sexual Abuse of Children—Washington's New Hearsay Exception, 58 Wash.L.Rev. 813 (1983).

ments were reliable, and that it was likely the child had been abused. The trial court's finding that respondent was not in contempt and that the decree should be modified was supported by the testimony of respondent and the psychologist.

Having determined that the trial court properly considered the statements of the child, and that there was substantial evidence for its judgment, reversal is called for only if this court has a firm belief that the trial court's findings were against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). As the trial court had the opportunity to view the parties and witnesses and hear their testimony, we have no such belief.

Appellant also contends that the trial court erred in modifying the dissolution decree because that action was in excess of the court's jurisdiction and a denial of due process, as no motion was filed for modification, there was no reasonable and proper notice of a hearing on any motion to modify, and no proceeding or hearing for that purpose.

■ *In re Marriage of Stuart,* 637 S.W.2d 371, 372 (Mo.App.1982), contained the same contention regarding lack of a motion to modify. There, the Eastern District of this court held that by a motion to cite the mother for contempt the father put the issue of child custody before the court and it had jurisdiction to modify his visitation rights. Following that decision we determine that there was jurisdiction to make the modification here.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.