**STATE of Missouri, Respondent,**

v.

**Richard MILLER, Appellant.**

**No. WD 51528.**

Missouri Court of Appeals,
Western District.

May 7, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 1996.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for Respondent.

Ellen H. Flottman, Asst. Public Defender, Columbia, for Appellant.

Before LOWENSTEIN, P.J., and HANNA and SPINDEN, JJ.

LOWENSTEIN, Judge.

Richard Miller appeals a jury conviction under § 566.060, RSMo. (1994) of sodomy of a seven-year-old girl. He was sentenced as a prior and persistent offender to fifteen years' imprisonment. His single point on appeal is that the trial court erred in allowing into evidence certain hearsay testimony by the physician who performed a sexual assault forensic exam (SAFE exam) on the victim. The physician testified that the girl, A.S., identified Miller as the man who sodomized her. The point was properly preserved by objection and was contained in the motion for new trial.

The evidence presented by the state consisted of only two witnesses: A.S. and Dr. Brian Conley, M.D., the doctor who performed the SAFE exam.

The evidence was that A.S. lives with her mother, her two brothers, and Charles Miller, her mother's boyfriend (defendant's brother). On May 10, 1994, seven-year-old A.S. was in the basement/garage of her home with defendant Richard Miller, where he was working on a car.

According to A.S., Miller came out from beneath the car and sodomized her. Her testimony was as follows:

A. He came out from underneath, and he pulled—and he pulled my pants down.

Q. Okay. After he pulled your pants down, what did he do?

A. He pulled his tail out.

Q. Okay. And is that what he has between his legs, a tail?

A. Yes.

Q. What did he do with his tail, A.?

A. He stuck it in my butt.

Q. Did that hurt?

A. Yes.

Q. Did he do anything else, A.?

A. Yes.

Q. What did he do with his hands?

A. He put them over my mouth.

Q. Did he say anything to you at that time, A.?

A. He said, "Don't tell nobody," but I did anyways.

Q. Who did you tell?

A. My mother.

According to Charles Miller, the sole witness called by the defendant, immediately after the incident, A.S. went upstairs and sat next to him on the couch and watched television, then went to her room, without saying a word. Dr. Conley testified that her actions showed withdrawal, a symptom of sexual abuse.

A week later, according to A.S., she told her mother about the incident. The Division of Family Services (DFS) was notified. (Actually, DFS had previously worked with A.S., when A.S. initiated an investigation of "Uncle Red," a friend of Charles Miller's. The interpretation of A.S.'s statements concerning Uncle Red turned out to be mistaken, and no evidence of sexual abuse was found.) When notified of the incident at issue here, DFS contacted Dr. Conley, who performed a SAFE exam.

Dr. Conley testified that he (like DFS) had previously encountered A.S. when he examined her in a sexual abuse case. The first time he performed a SAFE exam on her was in 1992, in an incident unrelated to this one where an eleven-year-old boy had been accused of molesting her. The 1992 SAFE exam produced no evidence of penetration. However, Dr. Conley reported that A.S. was masturbating excessively and "sexually acting out."

When Dr. Conley performed the 1994 SAFE exam because of the allegations in this case, he found evidence of anal penetration consisting of abnormal dilation and fissures that could have been caused by two fingers or a penis.

Over objection, Dr. Conley also testified as follows to hearsay communications made to him by A.S. during the SAFE exam:

Q. Doctor, what did A. say to you had happened to her?

A. A. told me that Richard Miller had taken her downstairs in their basement garage, off of the stairwell. Had placed her up against the car, had unzipped his pants, and unzipped her pants, and had placed his penis—she used the word "tail," that's her description of the male genitalia—in her rectum.

She stated that he had covered her mouth with his hand, and that he told her not to tell anyone.

Miller contends that the admission of the hearsay identification of him as the perpetrator was improperly admitted because 1) the statement did not fall within the exception to the hearsay rule of statements made to a treating physician, and 2) the statement was admitted without otherwise proving sufficient indicia of reliability in a hearing held outside the presence of the jury as required by § 491.075, RSMo. (1994).

## I. Statements to a Treating Physician

█ In an exception to the hearsay rule, Missouri law allows a treating physician to testify what a patient said to him or her "insofar as such statements are reasonably pertinent to diagnosis and treatment." *Breeding v. Dodson Trailer Repair Inc.*, 679 S.W.2d 281, 285 (Mo. banc 1984); *see also State v. Naucke*, 829 S.W.2d 445, 458 (Mo. banc 1992), *cert. denied*, 506 U.S. 960, 113 S.Ct. 427, 121 L.Ed.2d 348. The statements are considered reliable enough to admit despite the dangers of hearsay because a patient is deemed to know that proper diagnosis and treatment require her to provide accurate information.[1] *See Breeding* at 285.

Miller contends that the hearsay identification of him fell outside the treating physician exception because the identity of the assailant was not reasonably pertinent to diagnosis and treatment. The state responds that "the perpetrator's identity is important to lend context to the injury and evaluate its severity."

The Southern District of this court has considered this very question. In *State v. Russell*, 872 S.W.2d 866 (Mo.App.1994), the court determined that statements of identification made by a child to a treating physician in response to a social worker's question were inadmissible hearsay. The court explained its reasoning in part as follows:

However, not everything a patient says in a physician's presence falls within this hearsay exception. As the Eastern District Court of Appeals explained when it considered statements an automobile accident victim made to an attending physician, "The factual circumstances of the way in which the accident occurred would not generally be necessary for such diagnosis and treatment. The physician need not know which driver ran the stoplight."

*Id.* at 870 (quoting *Hughey v. Graham*, 604 S.W.2d 626, 630 n. 1. (Mo.App.1980)).

In concluding that statements of identification were not admissible hearsay under the treating physician exception, the court determined that a doctor performing a SAFE exam did not need to know the identity of the perpetrator to treat the patient. *Id.*

The state, at trial and in its brief, claims the *Naucke* case defines the treating physician exception as any "statements made to a treating physician." 829 S.W.2d at 458. The state is mistaken; although *Naucke* held that a victim's statements about oral sex, fondling and hymenal pain were admissible hearsay under the treating physician exception, *Naucke* clearly cites *Breeding* as the source of the rule, distilled in Mo. Evidence Restated, § 803(4)(1984) as follows:

(4) Statement for purposes of medical diagnosis or treatment.

A statement made for the purposes of securing health care and describing medical history, or past or present symptoms, pain or sensations, or the inception, or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment*. [emphasis added]

Further, in *Naucke*, "the reason the Court dispensed with the [statutory] hearing requirement was because the child's statements clearly fell within the medical treatment and history exception. The child's statements pertained only to how the child had been abused (which was relevant to treatment), not who was responsible. Had the statements fallen outside this deeply rooted hearsay exception, a hearing would have been required." *Russell*, 872 S.W.2d at 872 (citing *Naucke* ).

The state also cites this court's opinion in *State v. Smart*, 907 S.W.2d 275 (Mo.App. 1995). *Smart* was a refusal to reverse in similar circumstances under plain error review. Here, the error is preserved. The result in *Smart* does not control in the case at bar.

█ This court agrees that statements made to a doctor performing a SAFE exam

---

1. Missouri courts have questioned whether "what a patient tells a physician who is examining solely for the purposes of testifying at trial is ... inherently reliable." *Hughey v. Graham*, 604 S.W.2d 626, 630 (Mo.App.1980); *In re Marriage* *of P.K.A. and J.E.A.* 725 S.W.2d 78, 80 (Mo.App. 1987).

Neither party here addresses the specific nature of Dr. Conley's forensic exam.

identifying an alleged abuser are not reasonably pertinent to diagnosis and treatment such that they fall within a deeply rooted exception to the hearsay rule.

## II. Section 491.075 (Indicia of Reliability) Admissibility Hearing

Despite the ruling in I. above, A.S.'s statements to Dr. Conley could still have been admitted under § 491.075, RSMo. (1994) as follows:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings. . . .

Miller's counsel filed a pretrial motion requesting a hearing on the statements, and counsel also objected when Dr. Conley testified. The trial court ruled on the motion and objection in part as follows:

THE COURT: I do not know the nature of the statement made to the doctor. I will tell you right now, without knowing what she said, if the little girl said "Jim Bob entered my anus with his penis," I would say that is admissible.

■ The court apparently relied on *Naucke*; however, *Naucke* only indicates that the § 491.075 hearing is unnecessary if the statement otherwise falls within the treating physician exception to the hearsay rule. Because the statement of identification did not, a statutory hearing should have been held.

The issue, as an evidentiary one, could have been handled at trial or before. The hearing mandated by the statute need not be overly lengthy; it must simply be held out of the hearing of the jury, and the judge must determine whether there are sufficient indicia of reliability to admit the statement. *See Russell*, 872 S.W.2d at 871—72, for the requirements and nature of the hearing. It was error to fail to hold a hearing.

■ In evidentiary matters, this court will reverse only if the error was prejudicial such that it deprived defendant of a fair trial. *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). If evidence is competent under any theory, or for any purpose, the trial court cannot be convicted of reversible error for admitting it. *State v. Bohanon*, 747 S.W.2d 294, 299 (Mo. App.1988). Improperly admitted evidence should not be declared harmless unless it can be said to be harmless without question. *State v. Wright*, 582 S.W.2d 275, 277 (Mo. banc 1979).

■ Dr. Conley's statements were never demonstrated to have sufficient indicia of reliability, yet the jury could well have relied upon them. A doctor's testimony is probably given great weight, especially the testimony of an expert who told the jury he had performed over one hundred SAFE exams. Several members of the jury panel, including the jury foreperson, had taken their children to Dr. Conley as a pediatrician. A.S. and Dr. Conley were the only two witnesses who testified for the state. Dr. Conley's testimony mirrored A.S.'s, and under these circumstances improperly bolstered her testimony. This court cannot say without question that the doctor's testimony did not influence the jury and was therefore harmless. Absent a § 491.075 hearing outside the jury's presence, the result cannot stand and the case must be reheard.

Reversed and remanded for new trial.

All concur.