Richard ROGERS and Vickey Rogers, Plaintiffs–Appellants,

v.

B.G. TRANSIT CORPORATION, Defendant–Respondent.

No. 21121.

Missouri Court of Appeals, Southern District, Division One.

May 7, 1997.

Motion for Rehearing and Transfer to Supreme Court Denied May 29, 1997.

Application to Transfer Denied Aug. 19, 1997.

---

Steve Garner, Michael R. Tripp, Strong & Associates, Springfield, for plaintiffs–appellants.

Richard E. Davis, Rebecca J. Tatlow, Whiteaker & Wilson, P.C., Springfield, for defendant–respondent.

Before BARNEY, P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Appellants Richard Rogers and Vickey Rogers brought suit against Respondent for damages resulting from a collision in which Respondent's employee struck the car Richard Rogers was driving. Appellants sought damages, including medical expenses and future loss of income for Richard Rogers and for loss of consortium for Vickey Rogers. After a five-day trial, the jury returned a verdict awarding Richard Rogers $45,000 in damages and finding no damages on Vickey Rogers' loss of consortium claim. Judgment was entered in accordance with the verdict.

On appeal, Appellants contend the trial court erred in allowing Respondent to introduce evidence, in the form of medical telephone "progress notes" and phone messages, indicating Richard suffered no pain from his injuries. They also claim that they were deprived of their right to an impartial jury because the court refused to strike several allegedly biased veniremen from the panel.

Appellants' first point challenges the admissibility of the telephone notes and messages on the grounds that they constituted hearsay:

The trial court erred in allowing evidence of communication between "RK" and some unknown office worker set out on telephone message slips and telephone "progress notes" because the papers contained hearsay statements that did not come within any exception to the hearsay rule . . .

Initially, we find it necessary to decide whether Appellants properly preserved this issue for appeal.

■ To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial and then carried forward in the appeal brief. *State v. Greene*, 867 S.W.2d 273, 275 (Mo.App.1993). A hearsay objection must be raised at trial. *Champ v. Malon*, 905 S.W.2d 90, 93 (Mo.App.1995). Moreover, objections to evidence must be specific, must point out the grounds thereof, and are to be determined upon the grounds stated therein. *State v. Johnson*, 740 S.W.2d 279, 281 (Mo.App.1987).

■ A party may not advance on appeal an objection to evidence different from the one presented to the trial court. *In re Estate of Mueller*, 933 S.W.2d 903, 908 (Mo.App.1996). Nor may the party alter or broaden the scope of the objection on appeal. *Cowden v. Sun Oil Co. of Pennsylvania*, 583 S.W.2d 547, 549 (Mo.App.1979).

■ At trial, Respondent sought to introduce portions of a document obtained from the files of Dr. Richard Kiang who was one of the physicians who treated Richard Rogers after the accident. The document, contained as an exhibit in the record, consists of a series of dated entries referring to a variety of aspects relating to Richard Rogers' medical treatment. These entries include comments about prescriptions, therapy, patient complaints, and various communications regarding the patient. As such, both parties refer to the documents as "progress notes."

The portion of the notes Respondent sought to introduce included the following two entries:

6/11/94 Pt. called wanting to know if Dr. Kiang would begin seeing him again. Dr. Kiang says "medically speaking I cannot help him." J Brett 7/6/94 [Appellant's counsel] called on 6/24/94 requesting Dr. Kiang do a last eval. on Richard Rogers & then schedule a deposition. Dr. Kiang said "no thanks, that he didn't believe pt has pain" . . .

Respondent's successful attempt to introduce these notes and Appellants' objection took place during cross-examination of Appellants' witness, a nurse, who had testified that she had prepared charts and summaries

of Richard's medical history based on his medical records. As recorded in the transcript from the trial, the evidence was introduced as follows:

> Respondent's counsel: Your Honor, at this time we would ask the Court's permission to be allowed to question the witness about Dr. Kiang's charts for the period June 11, 1994, and I think July 6th of 1994 on the basis that that record contains references to Dr. Kiang's impressions and findings concerning his treatment of Mr. Rogers.
>
> The witness has testified that she made the sole determination as to what went on the chart and what did not go on the chart, and consequently I think I am entitled—as the Court pointed out, I think I am entitled to examine the witness and ask her what she thought about this particular notation that is included in the progress notes from Dr. Kiang's chart.
>
> . . . .
>
> Appellants' counsel: Your Honor, this is again the motion in limine. This is back to the situation where Dr. Kiang was called for a deposition and he didn't want to do it; and so that it is talking about. And this is the same thing that's been ruled on the motion in limine. You have got here, "I reconsidered after reviewing the chart" and he gave his deposition. And she said I didn't put it down in there to make a chart of the doctors' opinions, so it doesn't come within anything.
>
> . . . .
>
> Trial court: No, this appears to be in the record. I am going to permit cross-examination as to those portions of the medical charts which she did not summarize simply as an area where counsel may inquire whether or not she included summaries of those portions that you think are relevant but were not requested to be summarized by counsel, but I don't want to get into her opinion.
>
> Appellants' counsel: And do I need to object or is my objection—
>
> Trial court: No, you can have a continuing objection.

As is apparent from this exchange, Appellants failed to base their objection explicitly on hearsay. Reference is made to the motion in limine; however, even if this reference could substitute for a specific objection, an examination of the motion in limine included in the record indicates only that Appellants objected to "phone memos" on hearsay grounds. The motion in pertinent part, reads as follows:

> Defendant [Respondent] has produced phone memos which deal with the subject of setting up a deposition in the case. Defendant has used the memos claiming it to be evidence of Dr. Kiang's opinions concerning Richard Rogers. Reference to the phone memos is impermissible since (a) the memos are hearsay; (b) there is no exception to the hearsay rule concerning the memos; and (c) the representations concerning the phone memos are completely false as shown by the attached Affidavit prepared by Dr. Kiang after learning how the memos were being used improperly (Exhibit B).

The affidavit and accompanying exhibit show the phone memos to be two slips of pre-printed message forms. It is true that one of the phone memos appears to be that on which one of the progress notes was based, and Appellants apparently assume the progress notes should be subsumed under the objection of that memo.

But, as the trial court's response to the objection to the notes suggests, the notes are different from the phone memos. They required their own specific objection on the grounds articulated on appeal. *See Johnson,* 740 S.W.2d at 281 (denying point, in part, because appeals court was "left to speculate why [evidence] was objectionable"). Because such an objection was not raised at trial, we conclude the issue of the admissibility of the notes was not properly preserved for appeal. Appellants failed to set forth the same objection to the notes at trial and in their motion for new trial that they carried forward in the appeal brief.

■ As for the admissibility of the handwritten "phone memos," we agree with Respondent in that assuming that the progress notes were improperly admitted, we do not perceive any prejudice suffered by Appellants resulting from the memos. The con-

tent of the memos and the progress notes objected to by Appellants are virtually the same. *See State v. Newson*, 898 S.W.2d 710, 716 (Mo.App.1995)(affirming despite inadmissibility of statement on grounds that it was merely cumulative). Point denied.

For their second point, Appellants contend the trial court wrongly refused to strike several jurors for cause and thereby prevented them from receiving a hearing before an impartial jury. They claim that they were unfairly required to use up their peremptory challenges to remove prospective jurors whom the court should have removed for cause.

As Appellants acknowledge, this Court has recently adopted the approach of the Western District of this Court and held that a litigant in a civil case does not have a right to a new trial because he or she was required to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause. *Edley v. O'Brien*, 918 S.W.2d 898, 902 (Mo.App.1996). Nevertheless, they argue *Edley* should be overruled because in cases such as this one, the party that is forced to use up peremptory challenges is at an unfair disadvantage vis a vis the other party who continues to have the privilege of striking potentially unfavorable jurors.

But, as this Court explained in *Edley*, "[s]o long as an unqualified juror who was not removed based on a proper challenge for cause does not serve in a civil case," there is no reversible error. 918 S.W.2d at 902. A party without peremptory challenges is not necessarily deprived of an impartial jury. Appellants' invitation to overrule *Edley* is declined.

Appellants also claim that three veniremen who were eventually seated on the panel should have been struck for cause in that they equivocated about their ability to serve as impartial jurors.

Regarding allegations of error during voir dire, appellate courts generally defer to the trial court because the trial judge can observe the venireperson's demeanor and can consider the venireperson's answers in light of those observations. *McClain v. Petkovich*, 848 S.W.2d 33, 35 (Mo.App.1993). As such, the trial court is in a far better position to determine a potential juror's qualifications than we are. *Id.* Therefore, determinations by the trial courts such as the one at bar are overturned only when they are clearly and manifestly wrong. *Id.* Any doubts which exist are to be resolved in favor of the trial court's decision. *Id.*

Appellants assert that the following discussions with the three jurors, named Holdorf, Rios and Jones, demonstrate that they could not be fair and impartial:

1) Holdorf:

Venireman Holdorf: ... I feel like the law nowadays makes it too easy for people to sue.

Appellants' counsel: ... because of that would you have slight leanings toward the defense you feel?

Venireman Holdorf: I might have.

2) Rios:

Appellants' counsel: Would you have difficulty awarding future wage loss?

Venireman Rios: Yes, I believe so

...

Appellants' counsel: ... Mr. Rios, as far as the questions I have just asked, first of all if we prove it to your satisfaction could you award it [diminished wage earning]; and secondly, would you hold us to a higher standard of proof?

Venireman Rios: I probably could but you would have to—you would have to definitely convince me.

3) Jones:

Appellants' counsel: ... Would that affect you in this case ... the fact that because of an injury you actually were able to make more money later on do you think?

Venireman Jones: Well, what I am saying is the way things are today, it is kind of hard to predict what you will make in the future with everybody downsizing, people being laid off. I mean if you own your own business you don't know that that business is going to continue to make money, you know. So it is really hard to

determined what future earnings are going to be.

Appellants' counsel: I understand that. As far as, of course, all of this is a matter of proof. If we prove it to your satisfaction, could you give it?

Venireman Jones: Yeah, I suppose.

Appellants' counsel: And as far as the amount of proof that would be required, could you follow a preponderance of the evidence of the rule or the more believable evidence rule, or would you require something higher.

Venireman Jones: I would have to believe it.

These discussions do not persuade this Court that any of the three veniremen above could not be impartial or fair jurors. Both Rios and Jones, in fact, ended their interviews by indicating they could decide in favor of Appellants on the issue suggested to them. Holdorf's answer does not necessarily require a conclusion that he would be prejudiced against Appellants.

In *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo. banc 1980), a murder case, the following colloquy occurred between defense counsel and venireman who had a friend who was murdered:

Counsel: Let me ask you if that series of events [friend's murder]would tend to color your thinking here a little bit today? This is a murder trial.

Venireman: Yes, sir it might.

Counsel: How close of a friend was this?

Venireman: Well, we grew up together and went to school together.

Counsel: You were childhood chums then?

Venireman: Right.

Counsel: Was it a—without going into facts in great detail, did it involve firearms, stabbing?

Venireman: Firearms.

Counsel: Okay—you do believe that you might have a hard time putting that out of your mind as far as considering the facts of this instant case?

Venireman: Well, I can't tell you for sure you know, it is hard to tell right now, you know.

Counsel: Let me come back to that, you think about that for a minute or two.

Counsel: Mr. Thompson, do you have any further thoughts?

Venireman: No.

Counsel: I don't want to put you on the spot. You would try but you don't know whether you could, is that a fair conclusion?

Venireman: That is what I would do, try.

Counsel: But in searching your mind you are not sure whether you could or could not?

Venireman: That is correct.

Counsel: I want those to be your words, not mine.

Venireman: That is right.

Counsel: Okay, you feel comfortable with what I said?

Venireman: Yes.

In finding that the trial court did not abuse its discretion in refusing to strike the venireman for cause, the Supreme Court explained that "[a]t best his answers indicated a feeling against murder, not a feeling against the defendant who was charged with murder." *Olinghouse*, 605 S.W.2d at 61. The court concluded that the "question of whether or not the experience could be 'put out of his mind' is not determinative of the qualifications of the venireman." *Id.* "The question properly is whether or not that experience would produce bias or prejudice against the defendant on trial." *Id.*

 Similarly, in this case, while venireman Holdorf may have expressed a general feeling against excessive lawsuits, it was not clear that that translated into a bias against Appellants. Mere equivocation is not enough to disqualify a juror. *McClain*, 848 S.W.2d at 35. Appellants' second point is denied.

The judgment is affirmed.