**Craig POPE, Appellant,**

v.

**CHILD ABUSE AND NEGLECT REVIEW BOARD, A Division of Missouri Department of Social Services, Respondent.**

No. ED 91988.

Missouri Court of Appeals,
Eastern District,
Division One.

March 9, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 19, 2010.

Application for Transfer to Denied
May 25, 2010.

Daniel Haltenhof, Clayton, MO, for appellant.

Gary Gardner, Jefferson City, MO, for respondent.

NANNETTE A. BAKER, Judge.

### Introduction

Dr. Craig Pope ("Appellant") appeals from the trial court's finding by a preponderance of the evidence that he abused his daughter, K.P. He raises three points on appeal. First, he claims that the trial court erred and misapplied the law in extending the $PKA$[1] exception to the hearsay rule for out of court statements by a child concerning allegations of abuse to cases where child custody is not an issue. Second, Appellant claims that in the event that the $PKA$ exception to the hearsay rule applies to non child custody cases, the trial court erred and improperly admitted said hearsay evidence because there was an improper foundation for its admission. Third, Appellant claims that the trial court erred and misapplied the law in affirming the findings and determination of the Child Abuse and Neglect Review Board ("CANRB") in that it applied the wrong standard of review.

### Factual and Procedural Background

On January 27, 2006, the Missouri Department of Social Services received two calls alleging that Appellant was sexually molesting his daughter, K.P. Dorothy Herbst ("Herbst") was assigned to investigate the allegations. She went to the Popes' house along with Detective Morrison. When they arrived, Mrs. Pope was outside the house. Herbst asked if she knew why they were there. Herbst and Morrison asked Mrs. Pope if K.P. was at home and explained that they were there in response to two hotline calls.

---

1. *In re marriage of P.K.A. and J.E.A.*, 725 S.W.2d 78 (Mo.App. S.D.1987).

After giving Mrs. Pope the required documents describing the investigative process, Herbst and Morrison asked her basic questions about the structure of her family and the household. Next, Herbst and Morrison asked Mrs. Pope if she was aware that K.P. had disclosed what was alleged in their report and how she felt about it. Mrs. Pope indicated that she was aware that K.P. had disclosed sexual abuse. Herbst and Morrison told Mrs. Pope they still needed to talk to K.P. and waited at the Pope house for her to come home from school.

When K.P. arrived, Herbst and Morrison spoke to her alone. They told K.P. about the report, read her parts of the allegation and told her they needed to get more information from her. K.P. was reluctant to talk, stating that she did not think she had to since she had talked to others already about the allegations. K.P. also indicated that she was concerned about her safety. Herbst and Morrison told her that unless she told them what was going on and they could verify her safety, Morrison would have to take steps to place the children and the family into state custody and remove them from the household.

K.P. told Herbst and Morrison that she had told her sister[2] first and that her mother found out the next day. K.P. described in detail what she told her mother and sister about her father's actions, and stated that the abuse had been going on for five or six years. When asked about her safety, K.P. said she would feel safe if her mother were home. She also told Herbst and Morrison that her parents had split up for a couple of weeks and when her father came back, her mother moved her into a bedroom with a lock on the door where she now slept with one of her younger sisters.

After Herbst and Morrison finished interviewing K.P., they spoke with Mrs. Pope again and told her that Appellant would have to leave the house in order for the children to stay. Herbst and Morrison also spoke with K.P.'s two younger sisters and younger brother to determine the children's knowledge or lack thereof regarding the abuse. Finally, Herbst and Morrison had Mrs. Pope sign a safety agreement that Appellant would leave the home for the remainder of the investigation.[3]

Herbst attempted to interview Appellant, which is voluntary on the part of the alleged perpetrator, but he declined to talk to her. Morrison spoke with Appellant and confirmed that he would leave the house and not return during the investigation. After the case was opened, Morrison sent officers out to the house to check periodically that Appellant was not living there.

At the conclusion of the investigation, Herbst determined by a preponderance of the evidence that Appellant had sexually abused his daughter, K.P. Herbst based her finding on the consistency of K.P.'s statements to her and her statements to others she talked to. Herbst testified that she also relied on K.P.'s acknowledgement that her father admitted the abuse to her and said he was ashamed and apologized. Also, Herbst considered that Appellant refused to speak to her. Herbst's supervisor reviewed her determination of Appellant's action and signed off on it. This placed Appellant's name on the Central Registry, a registry of persons where the division

---

**2.** K.P. is the second of four daughters, the oldest of which no longer lives at home. She did not specify which sister she told about her father's abuse.

**3.** According to Herbst, the agreement is not legally binding.

has found by a preponderance of the evidence that the individual has committed child abuse or neglect.

After receipt of a letter dated February 22, 2006, Appellant filed a request for an administrative review of Herbst's determination by the Circuit Manager of the Department of Social Services. The review board, CANRB, heard Appellant's review and upheld the finding of preponderance of the evidence from Herbst's report.

Pursuant to Section 210.152.5,[4] Appellant filed a petition for de novo judicial review in St. Louis County. At trial, Herbst testified regarding her investigation. Appellant objected to her testimony concerning what K.P. had told her as hearsay. The trial court overruled the objection, stating that it would allow Herbst to testify subject to that objection. It ordered both sides to prepare a brief memorandum of law in support of their position at the conclusion of the hearing. Appellant did not put on any evidence. Based on the evidence heard and adduced, the trial court issued its order and judgment sustaining and affirming the findings and determination of the CANRB. This appeal followed.

### Standard of Review

The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.

*Id.* We view the facts in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *In re A.A.T.N.*, 181 S.W.3d 161, 166 (Mo.App. E.D.2005). We accord the trial court's ruling on admissibility of evidence substantial deference, and we will not disturb the trial court's ruling absent an abuse of discretion. *Kroeger–Eberhart v. Eberhart*, 254 S.W.3d 38, 44 (Mo.App. E.D.2007).

### Exception to Hearsay Rule

■ In his first point relied on, Appellant claims that the trial court erred and misapplied the law in extending the *PKA* exception to the hearsay rule for out of court statements by a child concerning allegations of abuse to cases where child custody is not an issue. Specifically he contends that every court case in Missouri that has applied the hearsay exception set forth in *PKA* was a case to determine child custody.

The *PKA* exception is set forth in *In re Marriage of P.K.A. and J.E.A.*, 725 S.W.2d 78 (Mo.App. S.D.1987). In *PKA*, the trial court held that the necessity to have statements of a child indicating abuse considered for their truth called for a special hearsay exception. *Id.* at 81. The court held that:

Where the best interest of the child is the primary concern, we believe that the courts should consider those statements for their truth. Although it may be an unfavorable reflection on the father if he has not been abusing the child, the paramount consideration must be the welfare of the child.

. . . .

Flexibility is needed in these cases, even where the child might be qualified to testify, because of the emotional trauma

---

4. All statutory references are to RSMo.2000, unless otherwise indicated.

that such an experience may cause. It is desirable to avoid the necessity of forcing a young child to testify as to abuse, particularly when the abuser is the victim's parent. This exception should support efforts to prevent child abuse. It is to be used only where abuse may have occurred, or has been threatened, and the child might not be competent or reasonably expected to testify to it.

*Id.*

Over the years since *PKA* was decided, we have examined and expanded the holding to include cases in which the best interest of the child was at issue that were not focused solely on sexual abuse in the context of a custody issue. *See AATN*, 181 S.W.3d at 169–70 (holding, in a termination of parental rights case, that evidence of any child abuse whether sexual, physical or emotional may be established by hearsay under the *PKA* exception); *Hord v. Morgan*, 769 S.W.2d 443 (Mo.App. W.D.1989) (extending the hearsay exception to non-sexual child abuse).

Appellant argues that the *PKA* hearsay exception applies only to cases in which custody of the child is at issue. However, the Southern District did not restrict the hearsay exception to only child custody cases. It explicitly held that "where the best interest of the child [wa]s the primary concern," courts should consider out of court statements made by the child for their truth. The Missouri Supreme Court, in *Jamison v. Dep't. of Soc. Serv.*, examined the role of the Central Registry as it related to the State's interest in protecting children from abuse and neglect. 218 S.W.3d 399 (Mo. banc 2007). The Children's Division of Social Services noted that listing perpetrators of abuse in the Registry provided a means to protect both victims of child abuse and other children with whom a perpetrator of abuse or neglect might come into contact by ensuring that information about cases of abuse is available to individuals and entities responsible for caring for and protecting children. *Id.* at 410.

In the case at bar, the alleged victim was Appellant's daughter. She told Herbst that her father had admitted the abuse to her and apologized to her for it. Forcing her to confront him and testify against him in a trial setting is precisely the situation that the *PKA* exception is meant to avoid. Given the State's overriding interest in protecting K.P. and other children from abuse and neglect at the hands of Appellant, we find no abuse of discretion in the trial court's admission of the hearsay evidence under the *PKA* exception. Point denied.

### *Foundation*

In his second point relied on, Appellant claims that even if the *PKA* exception applies to non child custody cases, the trial court erred and improperly admitted said hearsay evidence because there was an improper foundation for its admission. More specifically, he claims that the alleged victim, K.P., was 18 years old at the time of the hearing, and thus by definition, not a child under Section 210.110.4. He asserts that therefore, the best interest of the child was not the primary concern. We disagree.

Section 210.110.4 defines a child as "any person, regardless of physical or mental condition, under eighteen years of age." Despite Appellant's argument in his brief, however, there is nothing in the record to support his allegation that K.P. was no longer a child as defined in the statute. Moreover, this assertion was not raised during his objection to the hearsay evidence at trial. Nothing in the record indicates that the trial court had any information before it as to K.P.'s age.

A party may not advance on appeal an objection to evidence different from the one presented to the trial court. *Rogers v. B.G. Transit Corp.*, 949 S.W.2d 151, 153 (Mo.App. S.D.1997). Nor may the party alter or broaden the scope of the objection on appeal. *Id.* We have held that the *PKA* exception allowing hearsay evidence applies where the best interest of the child is the primary concern, sexual abuse may have occurred or has been threatened, the child might not be competent or reasonably expected to testify to the abuse, and a substantial basis exists that the statements are true. *In the Interest of S.M.*, 750 S.W.2d 650, 654 (Mo.App. E.D.1988).

Here, the trial court properly considered all of the factors, and found them present: K.P.'s best interest in ensuring her father did not continue the abuse, the fact that two other tribunals had already found by a preponderance of the evidence that the sexual abuse had occurred, the unreasonableness of expecting K.P. to testify against her father, and Herbst's finding that all of the statements K.P. made to her and others were substantially the same. Additionally, the court had evidence of the two separate telephone calls to the child abuse hotline that were made in January 2006, alleging Appellant's sexual abuse of K.P. The trial court had a proper foundation on which to admit the hearsay evidence that Appellant sexually abused K.P. This point is denied.

### Improper Standard of Review

In his third point relied on, Appellant claims that the trial court erred and misapplied the law in affirming the findings of the CANRB in that it applied the wrong standard of review, judicial review, instead of the correct standard of review, trial *de novo*. In support of his argument, he cites the trial court's statement at the beginning of the hearing, "we are here this morning to take up Plaintiff's Petition for Judicial Review of a decision of the Child Abuse Neglect Review Board," as evidence that the court was reviewing the decision and not conducting an independent hearing. What Appellant fails to clarify is that the trial court was reciting the title of his petition in its opening statement.

Section 210.152.5 reads in pertinent part:

> If the alleged perpetrator is aggrieved by the decision of the child abuse and neglect review board, the alleged perpetrator may seek de novo judicial review in the circuit court in the county in which the alleged perpetrator resides and in circuits with split venue, in the venue in which the alleged perpetrator resides, .... The case may be assigned to the family court division where such a division has been established. The request for a judicial review shall be made within sixty days of notification of the decision of the child abuse and neglect review board decision. In reviewing such decisions, the circuit court shall provide the alleged perpetrator the opportunity to appear and present testimony. The alleged perpetrator may subpoena any witnesses except the alleged victim or the reporter. However, the circuit court shall have the discretion to allow the parties to submit the case upon a stipulated record.

Appellant's point relied on, that the trial court applied judicial review instead of trial *de novo*, makes no sense in the context of this provision. It appears that Appellant is trying to argue that the trial court based its decision on a review of the CANRB's findings rather than conducting its own hearing.

The trial court's Order and Judgment reads in its entirety: "This matter was called for hearing on 7–10–08. Based on the evidence heard and adduced, the Court hereby sustains and affirms the findings and determination of the Child

Abuse and Neglect Review Board." Based on this, Appellant argues that the trial court merely adopted the CANRB report and made no independent determination of the issue. There is nothing in the record to indicate that the trial court had the CANRB report in evidence. It heard Herbst's direct testimony, her cross-examination by Appellant's counsel, redirect testimony and recross-examination. During Herbst's testimony, the court occasionally asked questions to clarify its understanding of her statements. We are not persuaded that the trial court based its finding that Appellant sexually abused his daughter, K.P., by a preponderance of the evidence on anything other than the evidence it had before it. This point is denied.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J., and CLIFFORD H. AHRENS, J., concur.